## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

| | |
|---|---|
| JAMES SCOTT LAWSON | Case No. 09-36177 |
| KERRI McCON LAWSON | |
| a/k/a KERRI ANN McCON | |
| Debtors | |
| KENNETH JAMES HART | Case No. 09-36514 |
| CARLA DEE HART | |
| Debtors | |
| EVA LOUISE NEWMAN | Case No. 09-36772 |
| Debtor | |
| MAURICE ROYSTON SOLES | Case No. 09-36796 |
| LILLIE LOUISE SOLES | |
| Debtors | |
| CLEOFUS ANTHONY SANCHEZ, JR. | Case No. 09-36802 |
| BRANDY LEE SANCHEZ | |
| Debtors | |
| WILLIAM BRADLEY DICKERSON | Case No. 09-36875 |
| CYNTHIA TAYLOR DICKERSON | |
| Debtors | |
| MARY LOUISE ZICK | Case No. 09-36938 |
| Debtor | |
| JOHN DOUGLAS COX | Case No. 10-30169 |
| Debtor | |

CHARLES ALLEN HOFFMAN                          Case No. 10-30181

       Debtor

CARL DEAN LUTTRELL, JR.                         Case No. 10-30275
SHERRY RENEE LUTTRELL

       Debtors

CYNTHIA LEA VITTETOE                            Case No. 10-30326
a/k/a CYNTHIA LEA JETT

       Debtor

JOSEPH CHARLES McGEE                            Case No. 10-30353
APRIL DAWN McGEE

       Debtors

NATASHA OLIVIA WOMBLE                           Case No. 10-30382

       Debtor

GARY STEVEN AARON, II                           Case No. 10-30442

       Debtor

KALENDA FAYE KNIGHT                             Case No. 10-30444

       Debtor

## MEMORANDUM ON DEBTOR ATTORNEY
## FEES AND DISCLOSURE MOTIONS

**APPEARANCES:**   RICHARD F. CLIPPARD, ESQ.
                 UNITED STATES TRUSTEE
                  William R. Sonnenburg, Esq.
                  31 East 11th Street
                  4th Floor
                  Chattanooga, Tennessee  37402
                  Assistant U.S. Trustee

Patricia C. Foster, Esq.
Howard H. Baker, Jr. United States Courthouse
800 Market Street
Suite 114
Knoxville, Tennessee  37902
Attorneys for United States Trustee

CARLOCK, COPELAND & STAIR, LLP
John C. Rogers, Esq.
Lindsey P. Hettinger, Esq.
2600 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, Georgia  30303-1235
Attorneys for Clark & Washington, P.C. and Zachary Burroughs, Esq.

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

These contested matters are before the court on the following:  (1) in *Hart*, Case No. 09-36514, the show cause Order entered by the court on December 8, 2009; (2) in *McGee*, Case No. 10-30353, the Motion of United States Trustee to Compel the Attorneys for the Debtors to Amend the Disclosure of Compensation and for Sanctions and Notice of Hearing filed on March 1, 2010; (3) in *Lawson*, Case No. 09-36177, *Newman*, Case No. 09-36772, *Soles*, Case No. 09-36796, *Sanchez*, Case No. 09-36802, *Dickerson*, Case No. 09-36875, *Zick*, Case No. 09-36938, *Cox*, Case No. 10-30169, *Hoffman*, Case No. 10-30181, *Luttrell*, Case No. 10-30275, *Vittetoe*, Case No. 10-30326, *Womble*, Case No. 10-30382, *Aaron*, Case No. 10-30442, and *Knight*, Case No. 10-30444, the Amended Motion for Sanctions and Other Relief Against the Law Firm of Clark & Washington and Attorney Zachary Burroughs and Notice of Hearing filed by the United States Trustee on March 19, 2010; and (4) in *Lawson*, Case No. 09-36177, *Newman*, Case No. 09-36772, *Soles*, Case No. 09-36796, *Sanchez*, Case No. 09-36802, *Dickerson*, Case No. 09-36875, *Zick*, Case No. 09-36938, *Cox*, Case No. 10-30169, *Hoffman*, Case No. 10-30181, *Luttrell*, Case No. 10-30275, *Vittetoe*, Case No. 10-30326, and *Womble*, Case No. 10-30382, the Motion for Sanctions Pursuant to 11 U.S.C. § 105(a) Against Clark & Washington, P.C. and Zachary Burroughs for Violations of Local Rule 2090-2 and General Order 2008-005 filed by the United States Trustee on April 1, 2010.

Pursuant to the Pretrial Order entered on May 14, 2010, and amended on July 1, 2010, these fifteen cases were consolidated for trial on the issues raised, and the trial was held on July 13 and 14, 2010.  The record before the court consists of stipulated exhibits and facts as set forth in the Stipulations of Undisputed Facts (Joint Stipulations) filed by the parties on July 2, 2010, ninety-seven exhibits admitted into evidence, including the deposition testimony of two unavailable

4

witnesses, Reem Boualem and Sandra Lamb, and the testimony at trial of four witnesses, all of whom are employed by Clark & Washington, P.C.: Zachary Burroughs, managing attorney for the Knoxville office, Emory Clark, founding and managing partner, Richard Thomson, supervising partner, and Amanda Stofan, managing attorney for the Chattanooga office.[1]

This is a core proceeding.  28 U.S.C. § 157(b)(2)(A), (O) (2006).

# I

Clark & Washington, P.C. (Clark & Washington) is a law firm based out of Atlanta, Georgia.[2]  It was founded in 1983 by Emory Clark, who serves as managing partner, focusing primarily upon the administration and financial aspects of the firm.  It employs approximately fifty-four attorneys and operates offices in six cities:  Atlanta, Georgia, Tampa and Orlando, Florida, and Nashville, Chattanooga, and Knoxville, Tennessee.  The Knoxville office, which was opened in 2006, consists of four separate branches, with the primary location at 5401 Kingston Pike.[3]  The Knoxville office employs six attorneys and thirteen staff members, and its sole practice area is consumer bankruptcy.  Zachary S. Burroughs is the managing attorney.  He graduated from law school in 2004, has been a practicing attorney for approximately five years, and was made managing

---

[1] Included among the stipulated exhibits are transcripts of examinations of various of the Debtors taken pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and transcripts of testimony given by various of the Debtors at their creditors' meetings.  The parties agreed that, rather than require the individual Debtors to testify, the court could consider their testimony as given during those proceedings.

[2] The firm has eight partners, seven of whom reside in Atlanta and one who resides in Tampa.

[3] For the purposes of this Memorandum, the court will refer collectively to Clark & Washington's Knoxville offices as "Knoxville office."

attorney for Clark & Washington's Knoxville office following the departure of its former managing attorney, Steven F. Crawford, in late November 2009.

In order to properly analyze the issues raised in these contested matters, it is necessary to revisit, briefly, the facts and issues addressed by the court in *In re Waldo*, 417 B.R. 854 (Bankr. E.D. Tenn. 2009) which, as in these cases, centered around Clark & Washington's fee arrangements with debtors in seven Chapter 7 cases.  Specifically, the primary issues confronting the court in *Waldo* were whether Clark & Washington was collecting discharged fees from its clients and the firm's failure to disclose the true nature of its fee arrangements in the Disclosure of Compensation of Attorney for Debtor(s) Statements (Compensation Disclosure Statements) being filed with the court. The *Waldo* cases came before the court through various motions filed by the United States Trustee (U.S. Trustee) asking the court to enter an order requiring Clark & Washington and its attorneys to amend the Compensation Disclosure Statements filed in each case to accurately reflect the fee arrangement with those debtors; to amend the Schedule F filed in each case to list Clark & Washington as a creditor for unpaid pre-petition legal fees; and seeking sanctions against Clark & Washington and Steven Crawford, its managing attorney at that time, in the form of disgorgement of all fees collected through the post-petition and post-discharge cashing of post-dated checks received from the debtors in each case as well as all attorneys' fees paid pre-petition.  Following preliminary hearings and the agreement to consolidate the cases for adjudication, the issues in *Waldo* were defined as follows:  (1) what was the nature of Clark & Washington's engagement contract with each of its clients as to whether its fees were a flat fee or bifurcated fee and if that agreement complied with the Bankruptcy Code; (2) whether the original Compensation Disclosure Statements

6

accurately reflected the contract between Clark & Washington and the respective debtors; (3) whether depositing a post-dated check or corresponding with debtor clients post-petition, including phone calls and letters concerning attorneys' fees not paid due to insufficient funds, violated the automatic stay pursuant to 11 U.S.C. § 362(a)(6) and/or 11 U.S.C. § 524's permanent injunction; (4) whether Clark & Washington advised debtor clients that pre-petition attorneys' fees are among the kind that are discharged in bankruptcy; and (5) because Clark & Washington failed to advise debtor clients that their pre-petition attorneys' fees would be discharged in their bankruptcy cases, whether it should be ordered to disgorge their fees pursuant to 11 U.S.C. § 329(b).

The *Waldo* Memorandum and Order were filed on October 27, 2009.  In its thorough memorandum opinion, this court resolved several issues, including issues that have been raised in these fifteen contested matters relating to the acceptance of post-dated checks as payment for attorneys' fees, the necessity of a full and accurate disclosure of compensation, and the dischargeability of attorneys' fees incurred pre-petition.  One such issue resolved by *Waldo* was whether Clark & Washington's engagement contract provided for payment of a flat fee or a fee bifurcated into pre- and post-petition services.  The court concluded that notwithstanding the statements at the end of each contract executed by the respective debtors that they "acknowledge and agree that this retainer contract contemplates payment for services rendered pre-Petition as well as services to be rendered post-Petition[,]" the attorneys' fees were not bifurcated.  *Waldo*, 417 B.R. at 883.  Based on the opening paragraph of the contracts, providing that "It is hereby agreed by the undersigned 'Attorney' and 'Client' that Attorney shall represent Client in a case under Title 11 USC Chapter 7.  Client agrees to an attorney fee of _____[,]" and the rule of law in Tennessee that

7

contracts are construed as of the date upon which they are made, this court held that, irrespective of when services were to be rendered, the engagement contracts between Clark & Washington and the respective *Waldo* debtors clearly provided for payment of a non-refundable flat fee prior to the filing of the petitions and the obligation of each debtor to pay the fees arose at the time the contract was executed. *Waldo*, 417 B.R. at 878, 883. Accordingly, having found that Clark & Washington's fees were pre-petition flat fees, this court joined the majority of other courts and also held that any unpaid attorneys' fees under the flat fee arrangement between Clark & Washington and the *Waldo* debtors were dischargeable, a fact of which Clark & Washington was required to advise its clients but had neglected to do so. *Waldo*, 417 B.R. 885.

With respect to the issue of accepting post-dated checks from debtor clients, *Waldo* unambiguously holds that "because 'flat fee' or 'no-look' attorneys' fees contracted for pre-petition are dischargeable, it is unacceptable for attorneys to ask for and receive post-dated checks from debtors to be cashed post-petition as payment of those fees." *Waldo*, 417 B.R. at 886 (citing cases). The decision also delved into the potential ethical implications of accepting post-dated checks, analyzing the practice in the context of Rule 1.8(a) of the Tennessee Rules of Professional Conduct which prohibits attorneys from acquiring an ownership, possessory, security, or other pecuniary interest adverse to their clients' interests. *Waldo*, 417 B.R. at 886 (quoting TENN. SUP. CT. R. 8, Rule 1.8(a)). Although this court declined to find that acceptance of post-dated checks from debtors created "a per se conflict of interest between attorneys and debtors due to the 'credit transactions' between them, the practice at least raises the question and the appearance of such a conflict since the information concerning potential dischargeability of the fees was not disclosed to the Debtors

8

whereby they could seek additional legal advice, and they did not consent, in writing, to acceptance of this potential conflict." *Waldo*, 417 B.R. at 887.

*Waldo* also addressed the automatic stay and discharge injunction aspects associated with accepting payment of attorneys' fees through post-dated debtor checks.  Following discussion of recent Sixth Circuit precedent concerning presentment of checks and the automatic stay's exception for the presentment of negotiable instruments at 11 U.S.C. § 362(b)(11) (2006), this court found that although presentment of the debtors' post-dated checks for payment during the pendency of the bankruptcy case did not violate the automatic stay, attempts to collect payment on checks that had been returned unpaid due to insufficient funds did violate the stay.  *Waldo*, 417 B.R. at 889-90. Additionally, with respect to the discharge injunction imposed by 11 U.S.C. § 524(a) (2006), the decision points out that § 524(a) contains no such exception, thus all of Clark & Washington's post-discharge attempts to collect payment from debtors for NSF checks violated the discharge injunction, as did the post-discharge presentment of post-dated debtor checks for payment.  *Waldo*, 417 B.R. at 891.

Finally, *Waldo* addresses the compensation disclosure requirements of 11 U.S.C. § 329(a) (2006) and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, reinforcing the importance and necessity for accurate disclosure of compensation received by attorneys from debtors in order to "enable[] courts to carefully scrutinize compensation paid to debtors' attorneys, providing protection to debtors and creditors and preventing overreaching by attorneys." *Waldo*, 417 B.R. at 892-93 (citing *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848 (B.A.P. 10th Cir. 1997).  This court also held that "[t]he failure to comply with the disclosure rules

9

is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rules[.]" *Waldo*, 417 B.R. at 893 (quoting *In re Campbell*, 259 B.R. 615, 627 (Bankr. N.D. Ohio 2001) (quoting *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 880 (9th Cir. 1995)).

As a result of its actions giving rise to the seven *Waldo* cases, Clark & Washington was required to disgorge all attorneys' fees received from the debtors in those cases and was required to refund service charges collected for debtor checks that were returned for insufficient funds. Clark & Washington disgorged all fees as required under *Waldo* and additionally voluntarily refunded $123,742.00 in actual or potential fees attributable to other similarly situated cases, by returning outstanding post-dated checks in its possession. COLL. TRIAL EX. 147 ¶ 8. Additionally, Clark & Washington revised its Chapter 7 Attorney-Client Agreement (Engagement Contract)[4] with respect to its attorneys' fees to be paid for services rendered in association with its representation of debtors in Chapter 7 cases. *See* TRIAL EX. 100.

As it relates to the issues raised in these fifteen contested matters, the initial Clark & Washington post-*Waldo* six page, single-spaced engagement contract, which outlines the debtors' duties as well as those of Clark & Washington, provides, *inter alia*, the following:

I. Pre-Petition Fees and Services:

a. Attorney offers and advertises a free consultation to prospective bankruptcy clients. Much of that initial consultation involves information gathering and interviews with clients regarding their debts, assets, financial circumstances, and

---

[4] In each section of this Memorandum, the court will refer to each Debtors' respective engagement agreement with Clark & Washington as "Engagement Contract" and will not repeatedly designate this reference in the subsection for each Debtors' cases.

10

transactions.  Consequently, a large portion of Client's case intake was performed during the initial consultation.  There is no charge for this service.

b. The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of $_____.

ANY FEE RELATING TO PRE-PETITION SERVICES WHICH IS NOT PAID PRIOR TO THE FILING OF CLIENT'S CASE IS SUBJECT TO BEING DISCHARGED IN CLIENT'S CASE.  ACCORDINGLY, ATTORNEY WILL WAIVE ANY ATTORNEY FEE FOR PRE-PETITION SERVICES WHICH HAS NOT BEEN PAID PRIOR TO THE FILING OF CLIENT'S PETITION.

II.  Post-Petition Fees and Services:

a.  Retainer.  As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case.  The retainer shall consist of post-dated checks in the total amount of $_____.

This retainer shall be applied to the post-Petition services to be rendered by Attorney in Client's case.  These services include, but are not limited to, those services listed in paragraph b. below.  The retainer is based upon a blended hourly rate of $165.  The amount of the post-Petition fees shall be capped at the amount of the retainer listed above, regardless of the amount of services expended in excess thereof.

The parties contemplate that the value of the post-Petition services rendered by Attorney in this case shall meet or exceed the total amount of the quoted retainer. Nonetheless, Client is entitled to request a final accounting of the fees charged by Attorney in this case and thereafter receive a refund of any amount of the retainer paid in excess of the value of the post-Petition services rendered.

CLIENT IS ADVISED THAT THE USE OF POST-DATED CHECKS FOR POST-PETITION PAYMENT OF A PRE-PETITION CHAPTER 7 ATTORNEY FEE IS NOT ALLOWED IN THE MAJORITY OF JURISDICTIONS.  TO ATTORNEY'S KNOWLEDGE, THE ACCEPTANCE OF POST-DATED CHECKS AS A RETAINER AGAINST SPECIFICALLY-SEGREGATED, POST-PETITION SERVICES HAS NOT BEEN DISALLOWED. NONETHELESS, CLIENT MIGHT WISH TO CONSULT INDEPENDENT COUNSEL IN THIS REGARD.

11

b. <u>Post-Petition Services</u>:  The post-Petition services to be rendered by Attorney in Client's case include, but are not necessarily limited to, the following:

i.  Notifying specific creditors of Client's case;

ii.  Filing Notices of Stay in any other court or tribunal where an action is pending against Client;

iii.  Mailing Client a copy of all petitions, notices and pleadings filed on Client's behalf;

iv.  Notifying Client of all court hearings, meetings, or other proceedings scheduled in Client's case;

v.  Consulting with Client about any questions or problems that might arise relating to Client's case;

vi.  Preparing for, attending, and representing Client in all required court hearings or other proceedings in Client's case;

vii.  Preparing and filing any and all pleadings and other documents which are necessary or appropriate in the prosecution of Client's case;

viii.  Advising Client of their responsibilities as a debtor;
ix.  Assisting/advising Client in carrying-out their statement of intentions;

x.  Assisting Client in obtaining and filing the required pre-discharge financial management certificate; and,

xi.  Assisting Client in cooperating with requests by the panel trustee, UST, or the Court.

c.  "<u>CarveOuts</u>":

i.  These fees do not include court filing costs.  Client shall be responsible for all court and credit counseling costs associated with this case.

ii.  Client agrees to pay an additional fee of $100.00 plus applicable court costs for each amendment filed, post-petition, to include, list, or disclose any information which Client failed to provide to Attorney prior to the filing of Client's case.

> iii.  Adversary Proceedings:  the parties specifically agree that the services contemplated in this contract of employment DO NOT include representing Client, either as a Plaintiff or Defendant, in any adversary proceeding filed in or in connection with this case.  Should Attorney agree to represent Client in an adversary proceeding, a different contract of employment shall be executed between the parties under such terms and conditions as the parties deem mutually acceptable.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client declines to retain Attorney, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

TRIAL EX. 100.  At trial, Mr. Thomas testified that he personally drafted the "straddle" contract at the end of October 2009, in an attempt to comply with the court's directives in *Waldo* by removing the non-refundable nature of the fees, adding the language advising that pre-petition attorneys' fees were potentially subject to discharge, adding the language concerning the potential conflict with taking post-dated checks in some jurisdictions, and removing all carve-outs other than adversary proceedings and post-petition amendments.  Believing that the "straddle" contract was in compliance with *Waldo* and after instituting the new engagement arrangements, Clark & Washington's Knoxville office once again began accepting, as one of its methods for payment of attorneys' fees, post-dated checks from debtors in addition to payments from third parties, payment in full prior to filing, or providing services pro bono.  JT. STIPS. ¶ 2.

Approximately three weeks later, Mr. Thomas once again revised Clark & Washington's engagement contract, removing subsection ii. accessing the additional fee for filing amendments contained in the "CarveOuts" section, stating it did not fit in with the spirit of a "straddle" contract and that it caused problems with their clients.  *See* TRIAL EX. 101.  No other changes were made to

13

the second post-*Waldo* form Chapter 7 Attorney Client Agreement, and the firm continued taking post-dated checks from debtors as payment for Chapter 7 bankruptcy cases.[5]

After noting that Clark & Washington was continuing to take post-dated checks from debtors, drawn on their bank accounts, the court entered an Order in *Hart* on December 8, 2009, directing Mr. Burroughs and Clark & Washington to appear and show cause why their compensation should not be limited to the $201.00 received from the Debtors pre-petition, why they should not be required to return all post-dated checks to the Debtors, and why the court should not summarily disallow all compensation purportedly paid by post-dated checks and direct the return thereof to the respective debtors in all Chapter 7 cases filed after entry of the *Waldo* decision on October 27, 2009.  As required by the court in its show cause order, Mr. Burroughs and Clark & Washington filed a brief on January 7, 2010, arguing, *inter alia*, that they had attempted to comply with the court's directives in *Waldo* and that the post-dated checks received from the Debtors were a retainer against post-petition services.

On March 19, 2010, the U.S. Trustee filed the Motion for Sanctions and Other Relief Against the Law Firm of Clark & Washington and Attorney Zachary Burroughs and Notice of Hearing (First Motion for Sanctions) in *Lawson*, *Newman*, *Soles*, *Sanchez*, *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, *Womble*, *Aaron*, and *Knight*, asking the court to enter an order finding Mr. Burroughs and Clark & Washington in contempt and ordering them to disgorge any prepaid or post-paid fees collected for filing inaccurate compensation disclosure statements, for failing to adequately disclose

---

[5] Unless expressly stated otherwise in the individual subsections forthcoming, each of the Debtors entered into one of the two initial post-*Waldo* engagement contracts with Clark & Washington, and it will be noted in each subsection which version of the contract was used for each of the Debtors.

that unpaid attorneys' fees were potentially dischargeable, and for violating the court's decision in *Waldo*.[6]  Additionally, the U.S. Trustee requested sanctions such as requiring all compensation disclosure statements filed by Clark & Washington to contain an original signature of a partner, shareholder, or principal, requiring the firm to filing an accounting of all billable time for non-flat fee cases, requiring fifteen additional CLE hours for each attorney in the firm's Knoxville office, assignment of a court-approved co-counsel to review all filings by Clark & Washington, and suspension from practicing before the court for a time to be determined.

Thereafter, on April 1, 2010, the U.S. Trustee filed the Motion for Sanctions Pursuant to 11 U.S.C. § 105(a) Against Clark & Washington, P.C., and Zachary Burroughs for Violations of Local Rule 2090-2 and General Order 2008-005 (Second Motion for Sanctions) in *Lawson*, *Newman*, *Soles*, *Sanchez*, *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, and *Womble*, asking the court to find Clark & Washington and Mr. Burroughs in violation of the Tennessee Rules of Professional Conduct for failing to obtain an original signature from the Debtors prior to filing the amended Statement of  Financial Affairs on March 4, 2010.  The U.S. Trustee requested imposition of sanctions, including suspension of the firm's electronic signature filing privileges, requiring the firm's attorneys to complete additional CLE courses, and suspension of Clark & Washington's attorneys from practice before the court for a time period to be determined.

---

[6] On that same date, in *Lawson*, *Newman*, *Sanchez*, *Dickerson*, and *Zick*, the U.S. Trustee filed an Amended Motion for Sanctions and Other Relief Against the Law Firm of Clark & Washington and Attorney Zachary Burroughs and Notice of Hearing for the sole purpose of amending the caption and the certificate of service; however, no revisions or amendments were made to the motion or the U.S. Trustee's substantive argument.

Following the filing of the Second Motion for Sanctions, the court entered an Order directing

Clark & Washington and Mr. Burroughs to file a response by April 15, 2010.  The Response of Clark

and Washington, P.C. and Zachary Burroughs to U.S. Trustee's Motions for Sanctions (Response)

was filed on April 12, 2010.   In the Response, Clark & Washington and Mr. Burroughs

acknowledged that they filed inaccurate initial Compensation Disclosure Statements in *Lawson*,

*Hart*, *Newman*, *Soles*, *Sanchez*, *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, *McGee*, and

*Womble*, but contended the errors were inadvertent and corrected when they filed amended

Compensation Disclosure Statements.  Clark & Washington and Mr. Burroughs also acknowledged

that in *Lawson*, *Newman*, *Soles*, *Sanchez*, *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, and

*Womble*, they filed amended Statements of Financial Affairs without first obtaining handwritten

signatures from the Debtors and that doing so was wrong but denied that they intended to mislead

the court.  With respect to the sanctions sought by the U.S. Trustee, Clark & Washington and Mr.

Burroughs averred that they had taken steps to ensure that neither error occurred in the future,

including changes to their procedure for filing compensation disclosure statements subject to review

by a partner.  Additionally, they agreed that disgorgement was an appropriate supplemental sanction

to their self-imposed sanction whereby they previously disgorged $123,742.00 in fees in an attempt

to comply with the *Waldo* opinion but argued that any additional sanctions sought by the U.S.

Trustee are not necessary or appropriate.

All matters raised in the U.S. Trustee's Motions for Sanctions, the *McGee* Motion, and the

court's show cause order in *Hart* were consolidated for trial at the preliminary hearing and continued

hearings held on April 22 and May 13, 2010, respectively.  Pursuant to the Pretrial Order entered on

16

May 14, 2010, and amended on July 1, 2010, the issues the court was called upon to resolve are summarized as follows:

A. whether, since Clark & Washington and Mr. Burroughs acknowledged that the Rule 2016(b) compensation disclosure statements filed with the court in *Lawson*, *Hart*, *Newman*, *Soles*, *Sanchez*, *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, *McGee*, and *Womble* did not accurately reflect the fee arrangements with the respective Debtors, disgorgement is the appropriate sanction;

B. whether the Chapter 7 Attorney-Client Agreement utilized by Clark & Washington and Mr. Burroughs and executed by the Debtors in *Zick*, *Hart*, *Newman*, and *Sanchez* violated *Waldo*;

C. whether the Chapter 7 Attorney-Client Agreement for Routine Cases Under 11 U.S.C. Chapter 7 utilized by Clark & Washington and Mr. Burroughs and executed by the Debtors in *Soles* violated *Waldo*;

D. whether the Chapter 7 Attorney-Client Agreement utilized by Clark & Washington and Mr. Burroughs and executed by the Debtors in *Dickerson*, *Lawson*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, *Womble*, *Aaron*, and *Knight* violated *Waldo*;

E. whether fees allowed to Clark & Washington and Mr. Burroughs should be limited to those received pre-petition under any of the foregoing Attorney-Client Agreements;

F. whether Clark & Washington and Mr. Burroughs adequately informed each of the Debtors that any attorneys' fees not paid prior to the filing of their bankruptcy cases were potentially dischargeable, as required by *Waldo*, and if not, whether they should be held in contempt;

17

G. whether Clark & Washington and Mr. Burroughs violated 11 U.S.C. § 526(a)(4)

(2006), the court's decision in *Waldo*, and/or Tennessee Supreme Court Rule 8, RPC 1.8 by

offering and accepting payment terms from the Debtors by allowing the tender of post-dated

checks from the Debtors themselves and/or from third parties;

H. whether the Chapter 7 Attorney-Client Agreement utilized by Clark & Washington

and Mr. Burroughs and executed by the Debtors in *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*,

*Vittetoe*, *Womble*, *Aaron*, and *Knight* constitutes a true "straddle" arrangement for the

division of pre- and post-petition fees and services, and if so:

(1) whether the fees charged by Clark & Washington and Mr. Burroughs for

pre- and/or post-petition services exceed the reasonable value of the services

rendered;

(2) whether Clark & Washington and Mr. Burroughs have a duty to provide

an accounting and/or itemized statement of services rendered to debtors;

(3) whether Clark & Washington and Mr. Burroughs were required by Rule

2016(b) or the Federal Rules of Bankruptcy Procedure to file a supplemental

compensation disclosure statement each time additional post-petition fees were paid;

I. whether the depositing and/or cashing by Clark & Washington and Mr. Burroughs

of post-dated checks received from the Debtors post-discharge violated the discharge

injunction of 11 U.S.C. § 524(a) (2006);

J. whether, since Clark & Washington and Mr. Burroughs acknowledged that they

prepared and filed an Amended Statement of Financial Affairs in *Lawson*, *Newman*, *Soles*,

*Sanchez*, *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, and *Womble* without first

18

obtaining the Debtors' permission and/or handwritten signature, as required by section III.A.3 of the Administrative Procedures for Electronic Case Filing, effective May 17, 2005, as amended, disgorgement is the appropriate sanction.

K. whether, if the court finds in the affirmative that Clark & Washington and Mr. Burroughs have committed any of the foregoing actions, disgorgement is an adequate sanction or whether other forms or additional sanctions are warranted, including, as requested by the United States Trustee: the disallowance of fees in their entirety, termination of Clark & Washington and Mr. Burroughs' status as Registered Users of the court's electronic case filing system, requiring all attorneys with Clark & Washington to attend continuing legal education courses supplemental to those required by the State of Tennessee, and/or the suspension of Clark & Washington and its attorneys to practice law in the United States Bankruptcy Court for the Eastern District of Tennessee.

The undisputed facts and issues raised by the parties in each bankruptcy case are detailed as follows.

## James Scott Lawson and Kerri McCon Lawson
### (Case No. 09-36177)

On November 3, 2009, James Scott Lawson and Kerri McCon Lawson retained Clark & Washington to represent them in the filing of their Chapter 7 bankruptcy case, executing in association with this representation the initial post-*Waldo* Engagement Contract. TRIAL EX. 9; *see also* TRIAL EX. 100. As to the specific fees for services to be rendered in the filing of their bankruptcy case, the Lawsons' Engagement Contract contains the following terms:

19

Client agrees to pay the following fees:

I.  Pre-Petition Fees and Services:

. . . .

b.  The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of <u>$800.00</u>.

. . . .

II.  Post-Petition Fees and Services:

a.  <u>Retainer</u>.  As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case.  The retainer shall consist of post-dated checks in the total amount of $_____.[7]

TRIAL EX. 9.  At that time and in accordance with the payment options offered, the Lawsons tendered to Clark & Washington, as payment of the $800.00 attorneys' fee provided for by their Engagement Contract, five post-dated checks from Jordan J. Perleoni, each in the amount of $160.00, for deposit into Clark & Washington's operating account on December 31, 2009, January 31, 2010, February 28, 2010, March 31, 2010, and April 30, 2010, respectively.  JT. STIPS. ¶¶ 1-2; TRIAL EX. 10.  Clark & Washington did not specifically instruct the Lawsons to incur debt to pay their fees but advised that they could finance the fee for a period of time after the case was filed through post-dated checks. JT. STIPS. ¶ 3.

---

[7] The amount is blank in the Engagement Contract entered into evidence as Trial Exhibit 9.

20

The Voluntary Petition commencing the Lawsons' Chapter 7 bankruptcy case was filed on November 10, 2009.[8] Filed contemporaneously with the Voluntary Petition was the Lawsons' Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy[9] that their $800.00 attorneys' fee was paid "[f]rom third-party payor, Jordan J. Perleoni, via post-dated checks; to be paid at $160.00 per month on 12/31/09, 01/31/10, 02/28/10, 03/31/10, and 04/30/10." COLL. TRIAL EX. 5. This information is also reflected on the Compensation Disclosure Statement executed and filed by Mr. Crawford on November 10, 2009, which discloses total compensation of $800.00, with $800.00 paid and a balance due of $0.00, paid "by third party Jordan J. Perleoni via post-dated checks; to be paid at $160 per month on 12/31/09, 01/31/10, 02/28/10, 03/31/10, 4/30/10." COLL. TRIAL EX. 6. The Compensation Disclosure Statement also reflects the following in paragraphs 6 and 7:

6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
d. [Other provisions as needed]
no limitation except as set forth in paragraph 7 below.

---

[8] Although the Lawsons executed their documents on November 3, 2009, the Voluntary Petition is dated November 10, 2009, the date upon which the case was filed. *See* COLL. TRIAL EX. 5. At trial, Mr. Burroughs testified that, due to an error in the software program, the dates defaulted to the filing date rather than the actual signature date.

[9] Question 9 directs debtors to "[l]ist all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of [the] case." COLL. TRIAL EX. 5. All references in this Memorandum to "question 9" refer to this question in the Statement of Financial Affairs, and references will not be made back to this footnote.

(i).  Other provisions:  This fee for pre-petition services is a flat fee in the amount of $_____.  The fee for post-Petition services shall be capped at $_____, and charged at a blended rate of $165 per hour. Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $_____.[10]

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

a.  There will be an additional charge of $100 plus applicable court costs for the preparation, filing and service of any amendment which is required to add or disclose any required information which should have been provided to counsel prior to the filing of the case.

b.  The contract between the parties does not include representation in adversary proceedings.

COLL. TRIAL EX. 6.  On November 12, 2009, Mr. Crawford filed an amended Compensation Disclosure Statement dated November 11, 2009, changing the balance due amount from $0.00 to $800.00 and completing the retainer portion of paragraph 6 to reflect $0.00 for pre-petition fees, $800.00 for post-petition fees, and no retainer.  COLL. TRIAL EX. 6.  Thereafter, on March 4, 2010, Mr. Burroughs filed a second amended Compensation Disclosure Statement dated March 1, 2010, with the paragraph 6 language deleted in its entirety and the paragraph 7 language revised to read:

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.

b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively

---

[10] These amounts are blank in the Compensation Disclosure Statement entered into evidence as the first document in Collective Trial Exhibit 6.

> declines Attorney's representation, Client obtains other counsel, or Attorney
> is allowed to withdraw by the Court.

TRIAL EX. 7.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of the Lawsons on March 4, 2010, listing at question 9 the individual $160.00 checks tendered to Clark & Washington by Jordan Perleoni dated December 31, 2009, January 31, 2010, February 28, 2010, March 31, 2010, and April 30, 2010, the dates upon which the post-dated checks were to be deposited. TRIAL EX. 8. The amended Statement of Financial Affairs contains the Debtors' electronic signatures but was filed by Mr. Burroughs without first obtaining the Lawsons' handwritten signatures. JT. STIPS. ¶ 4.

The U.S. Trustee took the 2004 examination of the Lawsons on February 9, 2010. In response to questions concerning their attorney fee arrangements with Clark & Washington, and specifically regarding the payment of those fees through third-party post-dated checks, Ms. Lawson testified as follows:

> Q. So the first time you met with them [Clark & Washington], about the second or third week of October, that you just discussed the fee arrangement, and what did they tell you that arrangement would be, besides the amount?
>
> A. That at that point, you all hadn't decided on the law. He said that it was just they could do five posted checks at $160 a month from us. And then when we came back the second time, which technically would be the first time for filing the petition, that's when they told us about the law, and that it had to be a third party. So then we came back a third time with our third party checks.
>
> Q. Okay. Now let's talk about those third-party checks. Who was the third party that wrote the checks?
>
> A. A friend of ours. Jordan Perlioni.

Q.  Okay.  And did he offer to pay for your bankruptcy?

A.  No, ma'am.  We have to pay him back.

Q.  Okay.  Now how do you pay him back?

A.  We pay him back with cash.  We just take it out of our budget for the whole
month and give it to him, and then he puts his – puts that cash into the account where
the checks are coming out of, and it gets paid that way.

Q.  So he didn't really offer to make the payments.

A.  No.

Q.  So why do you suppose you had to do this with a third-party check?  I mean
having it from a friend, when you're actually making the payment yourself?

A.  Well, from what they told – what Mitch [Chessman] told us was that our debt,
our attorney's fees, would be canceled out in the bankruptcy.  And then at that point,
I'm assuming that people weren't paying their attorney's fees like they had originally
agreed to.  So the third party which we had gone to and said, "hey can you help us
with this," and we made the agreement with him.

. . . .

Q.  So in fact he's not really paying your bankruptcy?

A.  No.  He's just – his name is on the check.

Coll. Trial Ex. 11 [K. Lawson] pg.8, ln.10-pg.10, ln.9.  Ms. Lawson's testimony was echoed by

Mr. Lawson, who testified that Mr. Perleoni, a long-time friend, provided them with the post-dated

checks at their request after they were advised by Clark & Washington that the options for payment

of the attorney fees were either in full up front or through a third party:

Q.  And did you ask him if he could fund you the money to pay up front for your
bankruptcy?

A.  The way I'd explained it to him is that we needed the third-party checks and that
I would give him the money before the check cleared to make sure it was in his
account.

Q.  Okay.  Who made that suggestion that you do it that way?

A.  I'm not sure I understand.

Q.  Well, did someone suggest to you that you could get a third-party – you could just agree to make payments to them and let them provide the checks, or did you come up with that idea all by yourself?

A.  We were told that the attorney's office would need third-party checks to – either up front or a third party.  We were explained that it couldn't be our post-dated checks.  I called Jordan on the phone and told him what the deal was and told him, just to let you know, I'm going [to] make sure the money – or I'm going to give you the money before the checks clear.  That way he doesn't have to worry about making sure his money is there.

Q.  Okay.  Did you call him from the attorney's office or from your home?

A.  I believe I called him from the attorney's office, right after we spoke to them and they told me that they would need third-party checks.

COLL. TRIAL EX. 11 [J. Lawson] pg.4, ln.17-pg.6, ln.2.

During the Rule 2004 examination, the Lawsons identified and/or reviewed their contract with Clark & Washington and, with respect to what they understood the contract to provide as to the attorney fees they were paying, Ms. Lawson testified to the following:

Q.  When you met with your attorneys, did they tell you how much they were going to charge you for doing the pre-petition work – that means the work up until they filed your case – and how much they were going to charge you for the post-petition work?

A.  They just said everything would be in that $800.  Everything would be included in that.

Q.  So they told you that was a flat fee for filing the bankruptcy basically?

A.  For the initial filing.  If we had to do an amendment or anything like that, there were additional fees, which I believe I've got a copy of.

25

. . . .

Q.  And do you recall that the terms were in this document that you would pay
$800 – a pre-petition fee of $800 that covers the remaining services?  Is that
correct? . . . .

. . . .

A.  Yes, ma'am.

Q.  Okay.  And as for post-petition fees and services, the amount was zero, wasn't
it?  There's nothing there?

A.  There's – they said the $800 would cover all of it.

Q.  Okay.

A.  They didn't specify exactly how much went to which.

COLL. TRIAL EX. 11 [K. Lawson] at pg.15, ln.11-22; pg.18, ln.15-pg.19, ln.6.  Finally, with respect

to the services rendered by Clark & Washington, Mr. Lawson testified that the majority of the work

in their case was done pre-petition.  COLL. TRIAL EX. 11 [J. Lawson] pg.10, ln.7-22.

The Lawsons received a discharge on March 1, 2010.  Based upon the estimated time records

prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total

of 6.2 hours to the Lawsons' bankruptcy case, of which 3.4 hours were attributed to pre-petition

work and 2.8 hours were attributed to post-petition work.[11]  COLL. TRIAL EX. 97.  Of the post-petition

hours, Mr. Burroughs testified at trial that 1.0 hour was actual attorney time.[12]  At trial, Mr.

---

[11] The attachment to Mr. Burroughs's Affidavit for the Lawsons' case reflects a total of 9.2 hours, but that figure
also includes 0.1 of an hour for a check returned for insufficient funds and 2.9 hours for time attributable to these
contested matters.

[12] The Lawsons paid their entire $800.00 fee post-petition which, based upon the estimated time records,
translates to $285.71 for the 2.8 post-petition hours, including the 1.0 hour of actual attorney time estimated by Mr.
Burroughs to have been spent on their case.

26

Burroughs testified that the Lawsons' $800.00 fee was a pre-petition flat fee subject to discharge irrespective that Clark & Washington had the Lawsons execute the initial post-*Waldo* engagement contract; however, the receipt of the Lawsons' account entered into evidence reflects that a "replacement" cash payment and two of Mr. Perlioni's post-dated checks were deposited by Clark & Washington into their operating account post-petition, with one of those checks deposited by Clark & Washington post-discharge on April 30, 2010, and that the Lawsons have a balance due of $160.00.  Jt. Stips. ¶ 6; Trial Ex. 10.

### Kenneth James Hart and Carla Dee Hart
### (Case No. 09-36514)

On November 20, 2009, Kenneth James Hart and Carla Dee Hart retained Clark & Washington to represent them in the filing of their Chapter 7 bankruptcy case, executing in association with this representation the initial post-*Waldo* Engagement Contract.  Coll. Trial Ex. 4; *see also* Trial Ex. 100.  As to the specific fees for services to be rendered in the filing of their bankruptcy case, the Harts' Engagement Contract contains the following terms:

Client agrees to pay the following fees:

I.  Pre-Petition Fees and Services:

. . . .

b.  The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of $201.00.

. . . .

27

II.  Post-Petition Fees and Services:

a.  <u>Retainer</u>.  As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case.  The retainer shall consist of post-dated checks in the total amount of <u>$899.00</u>.

COLL. TRIAL EX. 4.  At that time and in accordance with the payment options offered, the Harts tendered to Clark & Washington, as payment of the $1,100.00 attorneys' fee provided for by their Engagement Contract, $201.00 along with three post-dated checks in the amount of $220.00 and one post-dated check in the amount of $239.00, all written on the Debtors' personal bank account, for deposit into Clark & Washington's operating account on December 20, 2009, January 20, 2010, February 20, 2010 and March 20, 2010, respectively.  JT. STIPS. ¶¶ 1-2; COLL. TRIAL EX. 4.

The Voluntary Petition commencing the Harts' Chapter 7 bankruptcy case was filed on November 30, 2009.[13]  Filed contemporaneously with the Voluntary Petition was the Harts' Statement of Financial Affairs, reflecting in response to question 9 that their $1,100.00 attorneys' fee was paid by them on November 20, 2009.  COLL. TRIAL EX. 1.  This information is not, however, reflected on the Compensation Disclosure Statement executed by Mr. Burroughs on November 20, 2009, and filed on November 30, 2009, which disclosed total compensation of $1,100.00, with $201.00 paid and a balance due of $899.00 to be paid "by debtor via post-dated checks in the amount of $220 each on 12/20/09, 1/20/10, 2/20/10 and $239 on 3/20/10."  COLL. TRIAL EX. 2.  The Compensation Disclosure Statement also reflects the following in paragraphs 6 and 7:

6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

---

[13] *See supra* n.8.  The Harts executed their documents on November 20, 2009, but the Voluntary Petition is dated November 30, 2009, the date upon which the case was filed.  *See* COLL. TRIAL EX. 1.

a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

d.  [Other provisions as needed]

no limitation except as set forth in paragraph 7 below.

(i).  Other provisions:  This fee for pre-petition services is a flat fee in the amount of $201.00.  The fee for post-Petition services shall be capped at $899.00, and charged at a blended rate of $165 per hour. Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $899.00.

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

a.  There will be an additional charge of $100 plus applicable court costs for the preparation, filing and service of any amendment which is required to add or disclose any required information which should have been provided to counsel prior to the filing of the case.

b.  The contract between the parties does not include representation in adversary proceedings.

COLL. TRIAL EX. 2.  On March 4, 2010, Mr. Burroughs filed an amended Compensation Disclosure Statement dated March 2, 2010, with the paragraph 6 language deleted in its entirety and the paragraph 7 language revised to read:

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.

b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 2.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of the Harts

on March 4, 2010, listing at question 9 the $201.00 payment received by Clark & Washington from

the Debtors on November 20, 2009, the individual $220.00 checks received by Clark & Washington

from the Harts dated December 20, 2009, January 20, 2010, and February 20, 2010, and the $239.00

check dated March 20, 2010, the dates upon which each of their post-dated checks were to be

deposited.  TRIAL EX. 3.  The amended Statement of Financial Affairs contains the Debtors'

electronic signatures but was filed by Mr. Burroughs without first obtaining the Harts' handwritten

signatures.  JT. STIPS. ¶ 4.

The Harts received a discharge on March 24, 2010.  Based upon the estimated time records

prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total

of 8.9 hours to the Harts' bankruptcy case, of which 3.9 hours were attributed to pre-petition work

and 5.0 hours were attributed to post-petition work.  COLL. TRIAL EX. 97.  Of the post-petition hours,

Mr. Burroughs testified at trial that 1.3 hours were actual attorney time.[14]  Of the total $1,100.00 fee,

the receipt entered into evidence reflects a balance due of $194.00.  COLL. TRIAL EX. 4.

---

[14]  The Harts paid $899.00 of their fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $179.80 for the 5.0 post-petition hours, including the 1.3 hours of actual attorney time estimated by Mr. Burroughs to have been spent on their case.

**Eva Louise Newman**
**(Case No. 09-36772)**

On November 3, 2009, Eva Louise Newman retained Clark & Washington to represent her

in the filing of her Chapter 7 bankruptcy case, executing in association with this representation the

initial post-*Waldo* Engagement Contract.  COLL. TRIAL EX. 29; *see also* TRIAL EX. 100.  As to the

specific fees for services to be rendered in the filing of her bankruptcy case, Ms. Newman's

Engagement Contract contains the following terms:

> Client agrees to pay the following fees:
>
> I.  Pre-Petition Fees and Services:
>
> . . . .
>
> b.  The balance of the pre-Petition fee covers the remaining services required to assist
> Client in obtaining their required credit counseling certificate, gathering necessary
> information and documents, advising Client regarding the legal issues involved in
> Client's case, advising Client of the upcoming process, advising Client of their
> responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings.
> The fee for these services is a flat fee of <u>$150.00</u>.
>
> . . . .
>
> II.  Post-Petition Fees and Services:
>
> a.  <u>Retainer</u>.  As a condition of representation in this case, Client agrees to pay
> Attorney a retainer for services to be rendered post-Petition in Client's case.  The
> retainer shall consist of post-dated checks in the total amount of <u>$1,100.00.</u>

COLL. TRIAL EX. 29.  At that time and in accordance with the payment options offered, Ms. Newman

tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by her

Engagement Contract, $150.00 along with five post-dated checks written on the Debtor's personal

bank account, each in the amount of $220.00, for deposit into Clark & Washington's operating

31

account on January 8, 2010, February 5, 2010, March 5, 2010, April 2, 2010, and May 14, 2010,

respectively.  Jt. Stips. ¶¶ 1-2; Coll. Trial Ex. 29.

The Voluntary Petition commencing Ms. Newman's Chapter 7 bankruptcy case was filed on

December 12, 2009.[15]  Filed contemporaneously with the Voluntary Petition was Ms. Newman's

Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to

debt counseling or bankruptcy that her $1,250.00 attorneys' fee was paid by her on December 11,

2009.  Coll. Trial Ex. 26.  This information is not, however, reflected on the Compensation

Disclosure Statement executed by Mr. Burroughs on December 11, 2009 and filed on December 12,

2009, which disclosed total compensation of $1,250.00, with $150.00 paid and a balance due of

$1,100.00 to be paid "by debtor via post-dated checks in the amount of $220 each on 1/08/10,

2/05/10, 3/05/10, 4/02/10, and 5/14/10."  Coll. Trial Ex. 27.  The Compensation Disclosure

Statement also reflects the following in paragraphs 6 and 7:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> a. [Other provisions as needed]
>> no limitation except as set forth in paragraph 7 below.
>> (i).  Other provisions:  This fee for pre-petition services is a flat fee in the amount of $150.00.  The fee for post-Petition services shall be capped at $1100.00, and charged at a blended rate of $165 per hour. Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $1100.00.
>
> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

[15] *See supra* n.8.  Ms. Newman executed her documents on December 7, 2009, but the Voluntary Petition is dated December 12, 2009, the date upon which her case was filed.  *See* Coll. Trial Ex. 26.

> a. These fees do not include certain costs associated with this case. Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.
> b. The contract between the parties does not include fees for representing Client in adversary proceedings. If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 27. On February 2, 2010, Mr. Burroughs filed an amended Compensation Disclosure Statement dated February 1, 2010, with the paragraph 6 language deleted in its entirety. COLL. TRIAL EX. 27.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of Ms. Newman on March 4, 2010, listing at question 9 the $150.00 payment received by Clark & Washington from the Debtor on December 11, 2009, and the individual $220.00 checks received by Clark & Washington from Ms. Newman dated January 6, 2010, February 5, 2010, March 5, 2010, April 2, 2010, and May 14, 2010, the dates upon which her post-dated checks were to be deposited. TRIAL EX. 28. The amended Statement of Financial Affairs contains the Debtor's electronic signature but was filed by Mr. Burroughs without first obtaining Ms. Newman's handwritten signature. JT. STIPS. ¶ 4.

Ms. Newman attended her meeting of creditors on January 11, 2010, at which time the attorney for the U.S. Trustee questioned her concerning her fee arrangement with Clark & Washington. In response to the U.S. Trustee's request that she explain, in her own words, the terms of her Engagement Contract, Ms. Newman answered as follows:

33

A.  What the terms were?  Let's see.  That I pay up front five different, I think it's five different payments, and then after three months then the bill's been wiped off, but the five different post-dated checks –

Q.  Okay.

A.  – for the fees.

TRIAL EX. 30 pg.203, ln.5-11.  With respect to the retainer language specifically, Ms. Newman testified to the following:

Q.  Okay.  And did you understand – what do you understand that that means?

A.  That's what I was reading to see.  If it exceeds it, then we get a refund of what's left over.

Q.  All right.  And do you know how they're charging that?  Did you understand that this was $165 an hour for their post-petition services?  Did you understand this before right now?

A.  No.  I just – just briefly read over it.

Q.  What were you told about your attorney fees, that they were just going to be a certain amount to cover your bankruptcy?

A.  Yes.

Q.  That's kind of what you understood?

A.  Uh-huh.

Q.  Okay.  Now, then, do you understand that now, that you might be entitled to a refund of some of those fees?

A.  I didn't know that.

Q.  Is that what you understand in here?

A.  Uh-huh, yes.

. . . .

34

Q.  Okay.  And tell me, did they tell you that you might be entitled to get a refund of your money?

A.  No.

. . . .

Q.  Okay.  Did you understand that the work they did prior to your case being filed would be charged at a certain amount and then the work that they did after your case was filed would be charged at a certain amount?

A.  No.

Q.  Okay.  So it was your understand that that fee was –

A.  Everything.

TRIAL EX. 30 pg.208, ln.15-pg.209, ln.10; pg.210, ln.14-16; pg.213, ln.4-11.  Ms. Newman testified

that, although her Engagement Contract with Clark & Washington stated that she was to pay $150.00

pre-petition, she paid no money up front and was advised that she could make payments on her case

through the post-dated checks.  TRIAL EX. 30 pg.204, ln.22-pg.205, ln.5.  She also testified that no

one from Clark & Washington discussed with her that any attorney's fees for pre-petition services

not paid pre-petition would be waived and that she was not given any options for payment of her

attorney's fees, including the use of third-party post-dated checks or pre-payment in full, other than

by using post-dated checks drawn against her personal account.  TRIAL EX. 30 pg.211, ln.20-pg.213,

ln.19.

Ms. Newman  received a discharge on March 31, 2010.  Based upon the estimated time

records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm

devoted a total of 6.8 hours to Ms. Newman's bankruptcy case, of which 3.8 hours were attributed

to pre-petition work and 3.0 hours were attributed to post-petition work.[16]  COLL. TRIAL EX. 97.  Of

the post-petition hours, Mr. Burroughs testified at trial that .5 of an hour was actual attorney time.[17]

Of the total $1,250.00 fee, one post-dated check of $220.00 was deposited by Clark & Washington

post-discharge, and the receipt entered into evidence reflects a balance due of $220.00.  JT. STIPS.

¶ 6; COLL. TRIAL EX. 29.

### Maurice Royston Soles and Lillie Louise Soles
### (Case No. 09-36796)

On October 22, 2009, Maurice Royston Soles and Lillie Louise Soles retained Clark &

Washington to represent them in the filing of their Chapter 7 bankruptcy case, executing in

association with this representation a Chapter 7 Attorney-Client Agreement for Routine Cases Under

11 U.S.C. Chapter 7, which outlined their duties as well as those of Clark & Washington.  TRIAL EX.

41.  The parties have stipulated that the Soleses' Engagement Contract was the firm's pre-*Waldo*

engagement agreement and not in compliance with that opinion.  JT. STIPS. ¶ 7.  As it relates to fees

for services related to the filing of and representation by Clark & Washington in their bankruptcy

case at issue in these contested matters, the Soleses' Engagement Contract provides, *inter alia*, the

following:

---

[16] The attachment to Mr. Burroughs's Affidavit for Ms. Newman's case reflects a total of 7.1 hours, but that figure also includes 0.3 of an hour for time attributable to these contested matters.

[17] Ms. Newman paid $1,100.00 of her fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $366.67 for the 3.0 post-petition hours, including the 0.5 hour of actual attorney time estimated by Mr. Burroughs to have been spent on her case.

It is hereby agreed by the undersigned "Attorney" and "Client" that Attorney shall represent Client in a case under 11 U.S.C. Chapter 7. Client agrees to a total attorney fee of $_____.[18]

Attorney's fee includes fees for services to be rendered both pre- and post-petition. These serves are composed of separate components. The first component, the initial consultation, is free of charge. The second component, pre-petition services relating to the filing of the case, shall be paid prior to the filing of the case; however, if not paid prior to the filing of the petition, this portion of the fee shall be waived and any claim for the same will be subject to the discharge entered in Client's case. The third component, post-petition services relating to the prosecution of the case, shall be paid post-petition in monthly installments via post-dated checks.

This fee does not include court filing costs; Client shall be responsible for all court and credit counseling costs associated with this case. Client agrees to pay an additional fee of $100.00 plus court costs for each amendment filed, post-Petition, to include, list, or disclose any information which Client failed to provide to Attorney prior to the filing of Client's case. This agreement is predicated upon the completeness and accuracy of the relevant information provided to Attorney by Client. All fees paid by Client for the purpose of filing this Chapter 7 petition are NON-REFUNDABLE.

TRIAL EX. 41. The Engagement Contract also contains the following Acknowledgment executed by

the Soleses:

I further acknowledge and agree that this retainer contract contemplates payment for services rendered pre-Petition as well as serves to be rendered post-Petition. The initial payment represents fees earned pre-Petition and the future payments are to be applied as contemporaneous compensation for post-Petition services.

---

[18] The amount is blank in the Engagement Contract entered into evidence as Trial Exhibit 41.

TRIAL EX. 41.[19]  Notwithstanding that their Engagement Contract does not require the payment of

any attorneys' fee, the Soleses tendered to Clark & Washington $140.00 along with three post-dated

checks written on the Debtors' personal bank account, each in the amount of $220.00, for deposit

into Clark & Washington's operating account on January 3, 2010, February 3, 2010, and March 3,

2010, respectively.  JT. STIPS. at ¶¶ 1-2; TRIAL EX. 42.

The Voluntary Petition commencing the Soleses' Chapter 7 bankruptcy case was filed on

December 14, 2009.[20]  Filed contemporaneously with the Voluntary Petition was the Soleses'

Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to

debt counseling or bankruptcy that their $800.00 attorneys' fee was paid by them on December 11,

---

[19]  Exhibit "A" attached to the Engagement Contract identifies the following as "Base Fee Services" included within the flat fee:  (i) helping client obtain pre-filing credit briefing, pay advices, and tax returns/transcripts; (ii) initial intake for Chapter 7 cases; (iii) attending the meeting of creditors and any adjourned meeting of creditors unless required to reappear due to the Debtors' non-appearance; (iv) pre-discharge financial counseling certification; (v) analysis of the Debtors' financial situation and advice in determining whether to file; and (vi) preparation and filing of the petition, schedules, and statement of financial affairs.  TRIAL EX. 41.  Exhibit "B" to the Engagement Contract lists the "Non-Base Fees Services/A La Carte Items" as follows, along with additional costs:  (i) any contested matters including adversary proceedings, objections to exemptions, determinations of dischargeability, and objections to discharge – $295.00 per hour; (ii) reaffirmation agreements – $50.00 per agreement; (iii) redemptions – $350.00; (iv) amendments – $104.00; (v) judicial lien avoidances – $150.00; (vi) defense of motions for relief from stay or other motions – $245.00 per hour; (vii) more than 75 creditors – $50.00; (viii) miscellaneous letters – $50.00; (ix) emails/faxes to creditors – $15.00; (x) motions to reopen the case – $100.00; (xi) credit reports – $20.00 per Debtor; and (xii) retrieving closed records – $0.25 per page.  TRIAL EX. 41.  The Engagement Contract also expressly excludes representation in adversary proceedings, stating that

(19) ADVERSARY PROCEEDINGS:  the parties specifically agree that the services contemplated in this contract of employment DO NOT include representing Client, either as a Plaintiff or Defendant, in any Adversary Proceeding filed in or in connection with this case.  Should Attorney agree to represent Client in an adversary proceeding, a different contract of employment shall be executed between the parties under such terms and conditions as the parties deem mutually acceptable.

TRIAL EX. 41.  The court addressed these so-called "carve-outs" listed on Exhibit "B" in *Waldo* and found them "particularly troublesome when Clark & Washington and Mr. Crawford have charged the Debtors fees ranging from $800.00 to $1,250.00, but now seek to exclude a majority of the services routinely performed post-petition from that flat fee."  *Waldo*, 417 B.R. at 885.

[20]  *See supra* n.8.  The Soleses executed their documents on October 22, 2009, but the Voluntary Petition is dated December 14, 2009, the date upon which the case was filed.  *See* COLL. TRIAL EX. 38.

2009. COLL. TRIAL EX. 38. This information is not, however, reflected on the Compensation

Disclosure Statement executed by Mr. Burroughs on December 11, 2009 and filed on December 12,

2009, which disclosed total compensation of $800.00, with $140.00 paid and a balance due of

$660.00 to be paid "by debtor via post-dated checks in the amount of $220 each on 1/3/10, 2/3/10,

3/3/10." COLL. TRIAL EX. 39. The Compensation Disclosure Statement also reflected the following

in paragraphs 6 and 7:

> 6. In return for the above-disclosed fee, I have agreed to render legal service for all
> aspects of the bankruptcy case, including:
>
>> a. [Other provisions as needed]
>> no limitation except as set forth in paragraph 7 below.
>> (i). Other provisions: This fee for pre-petition services is a flat fee
>> in the amount of $140.00. The fee for post-Petition services shall be
>> capped at $660.00, and charged at a blended rate of $165 per hour.
>> Debtor has provided counsel a retainer for the post-Petition services
>> in the form of post-dated checks in the total amount of $660.00.
>
> 7. By agreement with the debtor(s), the above-disclosed fee does not include the
> following service:
>
>> a. There will be an additional charge of $100 plus applicable court costs for
>> the preparation, filing and service of any amendment which is required to add
>> or disclose any required information which should have been provided to
>> counsel prior to the filing of the case.
>> b. The contract between the parties does not include representation in
>> adversary proceedings.

COLL. TRIAL EX. 39. On February 2, 2010, Mr. Burroughs filed an amended Compensation

Disclosure Statement dated February 1, 2010, with the paragraph 6 language deleted in its entirety

and revising the paragraph 7 language to read:

> 7. By agreement with the debtor(s), the above-disclosed fee does not include the
> following service:

a. These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.

b. The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 39.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of the Soleses on February 2, 2010, listing at question 9 the $140.00 payment received by Clark & Washington from the Debtors on December 11, 2009, and the individual $220.00 checks received by Clark & Washington from the Soleses dated January 3, 2010, February 3, 2010, and March 3, 2010, the dates upon which their post-dated checks were to be deposited.  TRIAL EX. 40.  The amended Statement of Financial Affairs contains the Debtors' electronic signatures but were filed by Mr. Burroughs without first obtaining the Soleses' handwritten signatures.  JT. STIPS. ¶ 4.

The U.S. Trustee took the 2004 examination of the Soleses on March 11, 2010.  In response to questions concerning their attorney's fee arrangement with Clark & Washington, neither Mr. nor Mrs. Soles understood their Engagement Contract to contain any allocation between pre-petition and post-petition attorney's fees, with Mrs. Soles stating that they didn't owe any fees after they filed, that they had "paid so much down in the beginning, and that's it, and then the monthly payment." TRIAL EX. 43 pg.11, ln.18-pg.12, ln.23; pg.13, ln.7-15.  Additionally, both Mr. and Mrs. Soles

40

testified that they were not informed that any debt they owed when they filed their petition was dischargeable.  TRIAL EX. 43 pg.12, ln.24-pg.13, ln.3; pg.15, ln.22-25.

The Soleses received a discharge on March 26, 2010.  Based upon the estimated time records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total of 6.5 hours to the Soleses' bankruptcy case, of which 3.5 hours were attributed to pre-petition work and 3.0 hours were attributed to post-petition work.  COLL. TRIAL EX. 97.  Of the post-petition hours, Mr. Burroughs testified at trial that .7 of an hour was actual attorney time.[21]  As reflected on the receipt entered into evidence, even though the Soleses' Engagement Contract expressly states that their attorneys' fee was $0.00, each of the Soleses' post-dated checks for the total $800.00 fee has been deposited, leaving a balance due of $0.00.  TRIAL EX. 42.

### Cleofus Anthony Sanchez, Jr. and Brandy Lee Sanchez
### (Case No. 09-36802)

Cleofus Anthony Sanchez, Jr. and Brandy Lee Sanchez retained Clark & Washington to represent them in the filing of their Chapter 7 bankruptcy case, executing in association with this representation the initial post-*Waldo* Engagement Contract by Mr. Sanchez on December 2, 2009, and by Ms. Sanchez on November 18, 2009.[22]  TRIAL EX. 35; *see also* TRIAL EX. 100.  As to the

---

[21] The Soleses paid $660.00 of their fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $220.00 for the 3.0 post-petition hours, including the 0.7 hour of actual attorney time estimated by Mr. Burroughs to have been spent on their case.

[22] During her Rule 2004 examination, Ms. Sanchez testified that she met with Katherine Brown when she executed the Sanchezes' Engagement Contract, that Ms. Brown was an attorney, and Ms. Brown gave her information about bankruptcy.  TRIAL EX. 37 pg.5, ln.14-pg.6, ln.5.  At trial, however, Mr. Burroughs testified that Ms. Brown had failed to pass the bar exam and was not, in fact, a licensed attorney in the State of Tennessee.

specific fees for services to be rendered in the filing of their bankruptcy case, the Sanchezes'

Engagement Contract contains the following terms:

> Client agrees to pay the following fees:
>
> I.  Pre-Petition Fees and Services:
>
> . . . .
>
> b.  The balance of the pre-Petition fee covers the remaining services required to assist
> Client in obtaining their required credit counseling certificate, gathering necessary
> information and documents, advising Client regarding the legal issues involved in
> Client's case, advising Client of the upcoming process, advising Client of their
> responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings.
> The fee for these services is a flat fee of <u>$150.00</u>.
>
> . . . .
>
> II.  Post-Petition Fees and Services:
>
> a.  <u>Retainer</u>.  As a condition of representation in this case, Client agrees to pay
> Attorney a retainer for services to be rendered post-Petition in Client's case.  The
> retainer shall consist of post-dated checks in the total amount of <u>$1,100.00.</u>

TRIAL EX. 35.  At that time and in accordance with the payment options offered, the Sanchezes

tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by their

Engagement Contract, $150.00 along with five post-dated checks written on the Debtors' personal

bank account, each in the amount of $220.00, for deposit into Clark & Washington's operating

account on January 31, 2010, February 28, 2010, March 31, 2010, April 30, 2010, and May 31, 2010,

respectively.  JT. STIPS. ¶¶ 1-2; TRIAL EX. 36; TRIAL EX. 37 pg.6, ln.16-pg.7, ln.14.

The Voluntary Petition commencing the Sanchezes' Chapter 7 bankruptcy case was filed on December 14, 2009.[23] Filed contemporaneously with their Voluntary Petition was the Sanchezes' Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy that their $1,250.00 attorneys' fee was paid by the Sanchezes on December 12, 2009. COLL. TRIAL EX. 32. However, the information reflected on the Compensation Disclosure Statement executed by Mr. Burroughs on December 12, 2009 and filed on December 14, 2009, disclosed total compensation of $1,250.00, with $150.00 paid and a balance due of $1,100.00 to be paid "by debtor via post-dated checks in the amount of $220 each on 1/31/10, 2/28/10, 3/31/10, 4/30/10, and 5/31/10." COLL. TRIAL EX. 33. The Compensation Disclosure Statement also reflected the following in paragraphs 6 and 7:

> 6.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> a. [Other provisions as needed]
>>    no limitation except as set forth in paragraph 7 below.
>>    (i).  Other provisions:  This fee for pre-petition services is a flat fee in the amount of $150.00.  The fee for post-Petition services shall be capped at $1100.00, and charged at a blended rate of $165 per hour. Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $1100.00.
>
> 7.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>
>> a.  These fees do not include certain costs associated with this case. Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.
>> b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and

---

[23] *See supra* n.8.  The Sanchezes executed their documents on November 18 and December 12, 2009, but the Voluntary Petition is dated December 14, 2009, the date upon which their case was filed.  *See* COLL. TRIAL EX. 32.

> represent Client's best interests until such time as either Client informs
> Attorney that Client does not wish to litigate the matter, Client affirmatively
> declines Attorney's representation, Client obtains other counsel, or Attorney
> is allowed to withdraw by the Court.

COLL. TRIAL EX. 33.  On February 2, 2010, Mr. Burroughs filed an amended Compensation

Disclosure Statement dated February 1, 2010, with the paragraph 6 language deleted in its entirety.

COLL. TRIAL EX. 33.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of the

Sanchezes on March 4, 2010, listing at question 9 the $150.00 payment received by Clark &

Washington from the Debtors on December 12, 2009, and the individual $220.00 checks received

by Clark & Washington from the Sanchezes dated January 31, 2010, February 28, 2010, March 31,

2010, April 30, 2010, and May 31, 2010, the dates upon which their post-dated checks were to be

deposited.  TRIAL EX. 34.  The amended Statement of Financial Affairs contains the Debtors'

electronic signatures but was filed by Mr. Burroughs without first obtaining the Sanchezes'

handwritten signatures.  JT. STIPS. ¶ 4.

The U.S. Trustee took the 2004 examination of the Sanchezes on March 11, 2010.  In

response to questions concerning their attorney's fee arrangement with Clark & Washington, Ms.

Sanchez testified as follows:

> A.  We were paying kind of like a retention fee of $150 or a retainer fee, and that we
> were making payments for [the] rest of our bankruptcy fee.

> Q.  Did they quote you an amount that it was going to cost for your bankruptcy for
> the attorney fees?

> A.  Yes.  The total was $1250, I believe.

44

Q.  Twelve fifty?

A.  Yeah.

Q.  Which is adding the $150 to $1150 –

A.  Yes.

Q.  – to $1100.  So that would be $1250, and that's what you understood was going to be your attorney fee?

A.  Yes.

. . . .

Q.  Did you understand in the event that they did not spend a little over six hours or almost seven hours of time on your case after it was filed that you could ask for a refund of the money?

A.  No, I didn't know.

Q.  Did anyone discuss that with you before you signed this?

A.  No.

Q.  So you didn't have any idea that the $1100 retainer fee was going to be billed out at $165 of actual time – an hour of actual time expended on your case?

A.  No.  I – I understood it to be $1250 was just the fee that we paid regardless of how much time was spent.

TRIAL EX. 37 pg.11, ln.2-19; pg.13, ln.24-pg.14, ln.13.


The Sanchezes received a discharge on April 6, 2010.  Based upon the estimated time records

prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total

of 6.8 hours to the Sanchezes' bankruptcy case, of which 3.3 hours were attributed to pre-petition

work and 3.5 hours were attributed to post-petition work.[24] COLL. TRIAL EX. 97. Of the post-petition

hours, Mr. Burroughs testified at trial that 1.7 hours were actual attorney time, although in her Rule

2004 examination, Ms. Sanchez stated that the post-petition time spent speaking or meeting with

anyone from Clark & Washington was "[s]omewhere between 30 minutes and an hour."[25] TRIAL EX.

37 pg.17, ln.19-20. Of the total $1,250.00 fee, two post-dated checks, each in the amount of

$220.00, were deposited by Clark & Washington post-discharge, and the receipt entered into

evidence reflects a balance due of $0.00. JT. STIPS. ¶ 6; TRIAL EX. 36.

### William Bradley Dickerson and Cynthia Taylor Dickerson
### (Case No. 09-36875)

On December 11, 2009, William Bradley Dickerson and Cynthia Taylor Dickerson retained

Clark & Washington to represent them in the filing of their Chapter 7 bankruptcy case, executing

in association with this representation the second post-*Waldo* Engagement Contract. TRIAL EX. 15;

*see also* TRIAL EX. 101. As to the specific fees for services to be rendered in the filing of their

bankruptcy case, the Dickersons' Engagement Contract contains the following terms:

Client agrees to pay the following fees:

I. Pre-Petition Fees and Services:

. . . .

b. The balance of the pre-Petition fee covers the remaining services required to assist
Client in obtaining their required credit counseling certificate, gathering necessary

---

[24] The attachment to Mr. Burroughs's Affidavit for the Sanchezes' case reflects a total of 6.9 hours, but that figure also includes 0.1 of an hour for time attributable to these contested matters.

[25] The Sanchezes paid $1,100.00 of their fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $314.29 for the 3.5 post-petition hours, including the 1.7 hours of actual attorney time estimated by Mr. Burroughs to have been spent on their case.

information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of <u>$150.00</u>.

. . . .

II.  Post-Petition Fees and Services:

a.  <u>Retainer</u>.  As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case.  The retainer shall consist of post-dated checks in the total amount of <u>$1,100.00</u>.

TRIAL EX. 15.  At that time and in accordance with the payment options offered, the Dickersons

tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by their

Engagement Contract, $150.00 along with five post-dated checks written on the Debtors' personal

bank account, each in the amount of $220.00, for deposit into Clark & Washington's operating

account on January 15, 2010, February 15, 2010, March 15, 2010, April 15, 2010, and May 15, 2010,

respectively.  JT. STIPS. ¶¶ 1-2; TRIAL EX. 16; TRIAL EX. 17 pg.189, ln.20-25.

The Voluntary Petition commencing the Dickersons' Chapter 7 bankruptcy case was filed

on December 18, 2009.[26]  Filed contemporaneously with the Voluntary Petition was the Dickersons'

Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to

debt counseling or bankruptcy that their $1,250.00 attorneys' fee was paid by them on December 16,

2009.  COLL. TRIAL EX. 12.  This information is not, however, reflected on the Compensation

Disclosure Statement executed by Mr. Burroughs on December 17, 2009 and filed on December 18,

2009, which disclosed total compensation of $1,250.00, with $150.00 paid and a balance due of

---

[26] *See supra* n.8.  The Dickersons executed their documents on December 11, 2009, but the Voluntary Petition is dated December 18, 2009, the date upon which their case was filed.  *See* COLL. TRIAL EX. 12.

47

$1,100.00 to be paid "by debtor via post-dated checks in the amount of $220 each on 1/15/10,

2/15/10, 3/15/10, 4/15/10, 5/15/10." COLL. TRIAL EX. 14.  The Compensation Disclosure Statement

also reflected the following in paragraphs 6 and 7:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

>> a.  [Other provisions as needed]
>> no limitation except as set forth in paragraph 7 below.
>> (i).  Other provisions:  This fee for pre-petition services is a flat fee in the amount of $150.00.  The fee for post-Petition services shall be capped at $1,100.00, and charged at a blended rate of $165 per hour. Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $1,100.00.

> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>> a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.
>> b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 14.   On February 2, 2010, Mr. Burroughs filed an amended Compensation

Disclosure Statement dated February 1, 2010, with the paragraph 6 language deleted in its entirety

and revising the paragraph 7 language to read:

> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>> a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.
>> b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary

> proceeding complaint, Attorney shall take appropriate steps to protect and
> represent Client's best interests until such time as either Client informs
> Attorney that Client does not wish to litigate the matter, Client affirmatively
> declines Attorney's representation, Client obtains other counsel, or Attorney
> is allowed to withdraw by the Court.

COLL. TRIAL EX. 14.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of the Dickersons on February 2, 2010, listing the $150.00 payment received by Clark & Washington from the Debtors on December 18, 2009, and the individual $220.00 checks received by Clark & Washington from the Dickersons dated January 15, 2010, February 15, 2010, March 15, 2010, April 15, 2010, and May 15, 2010, the dates upon which their post-dated checks were to be deposited. TRIAL EX. 13. The amended Statement of Financial Affairs contains the Debtors' electronic signatures but was filed by Mr. Burroughs without first obtaining the Dickersons' handwritten signatures. JT. STIPS. ¶ 4.

The Dickersons attended their meeting of creditors on January 22, 2010, at which time the attorney for the U.S. Trustee questioned them concerning their fee arrangement with Clark & Washington, at which time Ms. Dickerson stated that she had thought the entire fee paid would cover their whole bankruptcy. TRIAL EX. 17 pg.187, ln.17-pg.188, ln.10. When asked by the U.S. Trustee about the dual nature of pre-petition and post-petition fees and services, the Dickersons testified as follows:

Q. Okay. Now what do you think that means?

A. Well, it sounds like, if I gave them any money in – before the filing, that I could have put them in the filing and wiped that out. That's what it sounds like. I don't know if that's true or not.

49

Q.  Okay.  Now I want you to look down at the next paragraph, paragraph 2.  It talks about post-petition fees and services.

A.  Uh-huh.

Q.  And it talks about a retainer, and it shows that – it says that the retainer shall consist of post-dated checks in the total amount of $1,100, is that correct?

. . . .

Q.  – because it does have the numbers in there.  And it says here that the retainer –

A.  I do recall that, yes.  I do recall that.

Q.  Okay.  Now, let's look at this next paragraph.  I want you to read it out loud for me.

A.  This retainer shall be applied to the post-petition services to be rendered by attorney in client's name.  These services include, but are not limited to those services listed in paragraph 8 below.  The retainer is based upon a blended hourly rate of $165.  The amount of post-petition fees should be capped at the time of the retainer listed above regardless of the amount of services expended in the excess thereof.

Q.  Okay.  Now, what do you think that means?

A.  Well, it sounds to me like we agree on that amount to get the job done no matter what it takes.

Q.  Okay.  But that's the amount.  Do you understand what it means to have an hourly rate?

A.  Yeah.

Q.  Okay.  Now, tell me what – how do you think that –

A.  Well, that's like $175 per – $165 per hour, however many hours it takes.

Q.  Okay.  Now I want you to read this next paragraph to me.

. . . .

50

A.   Okay.   The parties contemplate that the value of the post-petition services rendered by attorney in this case shall meet or exceed the total amount of the quoted retainer.   Nonetheless, client is entitled to request a final accounting of the fees charged by attorney in this case and thereafter receive a refund of any amount of the retainer paid in excess of the value of the post-petition services rendered.

Q.  Okay.  Have you – do you understand the implication of that?

A.  That says that if it was a real quick and simple process and didn't take a lot of their time, unless there were charges that they can show me they had to pay, I might get some of that $1,100 back.

Q.  Right.  Did you understand that before you just read that now?

A.  No, I can't tell you that I did.

. . . .

Q.  Okay.  How about you, sir, did you read that?

A. [Mr. Dickerson] We read it together off the same page. . . . We skimmed through it.

Q.  Okay.  Did you understand that?

A.  I understand it now.

Q.  Okay.  But you didn't understand it then.  Did they explain – sit down and explain that that $1,100 was subject to an hourly rate and only – they would only bill according to how much time they spent on your case?

A. [Mr. Dickerson] We were told that it was going to cost this amount, and that's why we did the post-dated checks.  And we were supposed to read that.  I probably skimmed through it and didn't fully understand it.

TRIAL EX. 17 pg.191, ln.10-pg.194, ln.23.   With respect to paying their attorney's fees, Mr.

Dickerson testified that they had been given three options:  to borrow the money from family to pay

the attorney's fees, to pay in advance, or to provide post-dated checks, but that they had not been

advised that any money borrowed from family members would have been dischargeable.  TRIAL EX.
17 pg.196, ln.21-pg.198, ln.25.

The Dickersons received a discharge on March 30, 2010.  Based upon the estimated time
records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm
devoted a total of 7.0 hours to the Dickersons' bankruptcy case, of which 3.4 hours were attributed
to pre-petition work and 3.6 hours were attributed to post-petition work.[27]  COLL. TRIAL EX. 97.  Of
the post-petition hours, Mr. Burroughs testified at trial that 1.8 hours were actual attorney time.[28]
Of the total $1,250.00 fee, one post-dated check in the amount of $220.00 was deposited by Clark
& Washington post-discharge, and the receipt entered into evidence reflects a balance due of $0.00.
JT. STIPS. ¶ 6; TRIAL EX. 16.

## Mary Louise Zick
## (Case No. 09-36938)

On December 8, 2009, Mary Louise Zick retained Clark & Washington to represent her in
the filing of her Chapter 7 bankruptcy case, executing in association with this representation the
second post-*Waldo* Engagement Contract.  TRIAL EX. 22; *see also* TRIAL EX. 101.  As to the specific
fees for services to be rendered in the filing of her bankruptcy case, Ms. Zick's Engagement Contract
contains the following terms:

Client agrees to pay the following fees:

---

[27] The attachment to Mr. Burroughs's Affidavit for the Dickersons' case reflects a total of 7.3 hours, but that
figure also includes 0.3 of an hour for time attributable to these contested matters.

[28]  The Dickersons paid $1,100.00 of their fee for post-petition services which, based upon the estimated time
records, translates to an hourly rate of $305.56 for the 3.6 post-petition hours, including the 1.8 hours of actual attorney
time estimated by Mr. Burroughs to have been spent on their case.

> I. Pre-Petition Fees and Services:
>
> . . . .
>
> b. The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of <u>$150.00</u>.
>
> . . . .
>
> II. Post-Petition Fees and Services:
>
> a. <u>Retainer</u>. As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case. The retainer shall consist of post-dated checks in the total amount of <u>$850.00.</u>

COLL. TRIAL EX. 22. At that time and in accordance with the payment options offered, Ms. Zick tendered to Clark & Washington, as payment of the $1,000.00 attorneys' fee provided for by her Engagement Contract, $150.00 along with five post-dated checks written on the Debtor's personal bank account, each in the amount of $170.00, for deposit into Clark & Washington's operating account on January 5, 2010, February 5, 2010, March 5, 2010, April 5, 2010, and May 5, 2010, respectively. JT. STIPS. ¶¶ 1-2; TRIAL EX. 23.

The Voluntary Petition commencing Ms. Zick's Chapter 7 bankruptcy case was filed on December 23, 2009.[29] COLL. TRIAL EX. 19. Filed contemporaneously with the Voluntary Petition was Ms. Zick's Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy that her $1,000.00 attorneys' fee was paid by Ms.

---

[29] *See supra* n.8. Ms. Zick executed her documents on December 8, 2009, but the Voluntary Petition is dated December 23, 2009, the date upon which her case was filed.

Zick on December 16, 2009.  COLL. TRIAL EX. 19.  However, the information reflected on the

Compensation Disclosure Statement executed by Mr. Burroughs on December 17, 2009 and filed

on December 23, 2009, disclosed total compensation of $1,000.00, with $150.00 paid and a balance

due of $850.00 to be paid "by debtor via post-dated checks in the amount of $170 each on 1/5/10,

2/5/10, 3/5/10, 4/5/10, 5/5/10."  COLL. TRIAL EX. 20.  The Compensation Disclosure Statement also

reflected the following in paragraphs 6 and 7:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> a. [Other provisions as needed]
>>      no limitation except as set forth in paragraph 7 below.
>>      (i).  Other provisions:  This fee for pre-petition services is a flat fee in the amount of $150.00.  The fee for post-Petition services shall be capped at $850.00, and charged at a blended rate of $165 per hour. Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $850.00.
>
> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>      a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.
>      b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 20.  On February 3, 2010, Mr. Burroughs filed an amended Compensation

Disclosure Statement dated February 1, 2010, with the paragraph 6 language deleted in its entirety.

COLL. TRIAL EX. 20.

54

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of Ms. Zick on February 3, 2010, listing at question 9 the $150.00 payment received by Clark & Washington from the Debtor on December 17, 2009, and the individual $170.00 checks received by Clark & Washington from Ms. Zick dated January 5, 2010, February 5, 2010, March 5, 2010, April 5, 2010, and May 5, 2010, the dates upon which her post-dated checks were to be deposited. TRIAL EX. 21. The amended Statement of Financial Affairs contains the Debtor's electronic signature but was filed by Mr. Burroughs without first obtaining Ms. Zick's handwritten signature. JT. STIPS. ¶ 4.

The U.S. Trustee took the 2004 examination of Ms. Zick on March 11, 2010. In response to questions concerning the nature of her fee arrangement with Clark & Washington, Ms. Zick testified to the following:

Q. Ms. Zick, when you signed this agreement with Clark & Washington, did you read it?

A. Pretty well, pretty much, yeah, because I took it home. I have one here.

Q. Okay. Can you tell me what your understanding was about how the payments were going to be applied?

A. You mean the five post-dated checks?

Q. The pre-payments and the post-dated checks, yes.

A. They was – I don't understand. They made the checks out, and then before the date that it was due you – it went through the bank or you could go down and replace the check with cash.

. . . .

Q. Okay. Now then, when you talked to them about how much the bankruptcy would cost, how much did they tell you? Just the attorney fees. Not the filing –

A. Oh, just the attorney fees?

55

Q.  Yes.

A.  I think it was – I had it marked down one thousand something.

Q.  You think it was about a thousand dollars?

A.  Yeah.

Q.  All right.  I think that's probably what these numbers add up to be.  Now, did they tell you that they were going to charge you by the hour for all the work they did after the bankruptcy was filed?

A.  I don't think so.

Q.  There's a statement in your contract that says that "this retainer shall be applied to the post-petition services to be rendered by attorney in client's case.  These services include, but are not limited to, those services listed in paragraph b below.  The retainer is based upon a" – let's see.

A.  Blended.

Q.  – "blended hourly rate of $165."  Did you understand that you were going to be billed on an hourly rate against the $850 for post-petition services?

A.  Probably not, but you know.

Q.  Did you think that the cost of the bankruptcy was just a thousand dollars?

A.  Whatever – whatever – yeah, whatever I paid.

. . . .

Q.  Okay.  I understand.  Now then, did they also tell you, did you understand, that you might get some of the money back if they didn't spend that much time on your case after it was filed?

A.  Yeah.

Q.  And how did they explain that to you?

A.  Like at the end and when everything is done, then they would send you a letter and you could – if you didn't want to retain it, you didn't have to.  Something – like the last payment or something.

Q.  Okay.  So they would tell you how much they had really charged you for the bankruptcy?

A.  Yeah.

Q.  So it was your understand that you could get some money back at the end of the bankruptcy?

A.  But I wouldn't – I wouldn't do that.  I just pay the whole – whatever I was charged.

TRIAL EX. 25 pg.9, ln.22-pg.10, ln.10; pg.12, ln.2-pg.14, ln.17.

Ms. Zick received a discharge on April 13, 2010.  Based upon the estimated time records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total of 6.0 hours to Ms. Zick's bankruptcy case, of which 3.3 hours were attributed to pre-petition work and 2.7 hours were attributed to post-petition work.[30]  COLL. TRIAL EX. 97.  Of the post-petition hours, Mr. Burroughs testified at trial that .7 of an hour was actual attorney time.[31]  Of the total $1,000.00 fee, one post-dated check in the amount of $170.00 was replaced by Ms. Zick with cash and deposited by Clark & Washington post-discharge, and the receipt entered into evidence reflects a balance due of $0.00.  JT. STIPS. ¶ 6; TRIAL EX. 23; TRIAL EX. 25 pg.10, ln.7-10.

---

[30] The attachment to Mr. Burroughs's Affidavit for Ms. Zick's case reflects a total of 6.3 hours, but that figure also includes 0.3 of an hour for time attributable to these contested matters.

[31] Ms. Zick paid $850.00 of her fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $314.81 for the 2.7 post-petition hours, including the 0.7 hour of actual attorney time estimated by Mr. Burroughs to have been spent on her case.

**John Douglas Cox**
**(Case No. 10-30169)**

On December 9, 2009, John Douglas Cox retained Clark & Washington to represent him in the filing of his Chapter 7 bankruptcy case, executing in association with this representation the second post-*Waldo* Engagement Contract. Trial Ex. 67; *see also* Trial Ex. 101. As to the specific fees for services to be rendered in the filing of his bankruptcy case, Mr. Cox's Engagement Contract contains the following terms:

Client agrees to pay the following fees:

I. Pre-Petition Fees and Services:

. . . .

b. The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of $150.00.

. . . .

II. Post-Petition Fees and Services:

a. Retainer. As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case. The retainer shall consist of post-dated checks in the total amount of $1,100.00.

Trial Ex. 67. At that time and in accordance with the payment options offered, Mr. Cox tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by his Engagement Contract, five post-dated checks from Beverle Bledsoe Carpenter, each in the amount of $250.00, for deposit into Clark & Washington's operating account on February 1, 2010, March 1, 2010,

58

April 1, 2010, May 1, 2010, and June 1, 2010, respectively. Jt. Stips. ¶¶ 1-2; Trial Ex. 68.[32] Clark & Washington did not specifically instruct Mr. Cox to incur debt to pay his fees but advised that he could finance the fee for a period of time after the case was filed through post-dated checks. Jt. Stips. ¶ 3.

The Voluntary Petition commencing Mr. Cox's Chapter 7 bankruptcy case was filed on January 18, 2010.[33] Filed contemporaneously with the Voluntary Petition was Mr. Cox's Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy that his $1,250.00 attorneys' fee was paid by Beverle Bledsoe on January 4, 2010. Coll. Trial Ex. 64. This information is not, however, reflected on the Compensation Disclosure Statement executed by Mr. Burroughs on January 4, 2010, and filed on January 18, 2010, which disclosed total compensation of $1,250.00, with $0.00 paid and a balance due of $1,250.00 to be paid "by third party, Beverle Bledsoe, via post-dated checks in the amount of $250 each on 2/1/10, 3/1/10, 4/1/10, 5/1/10, & 6/1/10." Coll. Trial Ex. 65. The Compensation Disclosure Statement also reflected the following in paragraphs 6 and 7:

6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

a. [Other provisions as needed]
no limitation except as set forth in paragraph 7 below.
(i). Other provisions: This fee for pre-petition services is a flat fee in the amount of $150.00. The fee for post-Petition services shall be capped at $1100.00, and charged at a blended rate of $165 per hour.

---

[32] At his meeting of creditors, Mr. Cox identified the third party payor as "Beverle Bledsoe Carpenter." Trial Ex. 69 pg.222, ln.10-12.

[33] See supra n.8. Mr. Cox executed his documents on December 9, 2009, but the Voluntary Petition is dated January 18, 2010, the date upon which his case was filed. See Coll. Trial Ex. 64.

Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $\underline{\$ \ n/a.}$

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.

b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 65.  On February 1, 2010, Mr. Burroughs filed an amended Compensation Disclosure Statement dated January 29, 2010, with the paragraph 6 language deleted in its entirety. COLL. TRIAL EX. 65.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of Mr. Cox on February 3, 2010, listing at question 9 the individual $250.00 checks tendered to Clark & Washington by Beverle Bledsoe dated February 1, 2010, March 1, 2010, April 1, 2010, May 1, 2010, and June 1, 2010, the dates upon which the post-dated checks were to be deposited.  TRIAL EX. 66. The amended Statement of Financial Affairs contains the Debtor's electronic signature but was filed by Mr. Burroughs without first obtaining Mr. Cox's handwritten signature.  JT. STIPS. ¶ 4.

Mr. Cox attended his meeting of creditors on February 23, 2010, at which time the attorney for the U.S. Trustee questioned him concerning his fee arrangement with Clark & Washington.  In response to the U.S. Trustee's questions as to the nature of his fees, Mr. Cox answered as follows:

60

Q.  When you met with Clark & Washington, did you understand that there was going to be a flat fee charged for your bankruptcy?

A.  I did, yes.

Q.  And that's what your understanding was.

A.  Right, yes.

Q.  Even though this is the contract you signed which states otherwise.

A.  Right.

Q.  It was your understanding that you –

A.  Flat rate.

Q.  – would pay a flat rate.

A.  Exactly.

Q.  Okay.  Did anybody – did anybody at their office, any of the attorneys or paralegals or anyone sit down and discuss this contract with you and explain the terms and the billing of $165 an hour –

A.  No.

TRIAL. EX. 69 pg.228, ln.24-pg.229, ln.16.  He also testified that Ms. Carpenter, his girlfriend, provided him with the post-dated checks at his request after he was advised by Clark & Washington that he needed them but that it was never intended that Ms. Carpenter would pay for his bankruptcy case.  TRIAL EX. 69 pg.223, ln.13-22; pg.230, ln.18-pg.231, ln.9.  With respect to his options, Mr. Cox testified that he was not given any options – including payment of the attorney's fees in full up front – other than payment through third-party post-dated checks.  TRIAL. EX. 69 pg.230, ln.5-17.  Additionally, when asked how much time he had spent since the time his case was filed talking with

anyone from Clark & Washington, Mr. Cox answered "[t]hree, maybe four minutes." TRIAL EX. 69 pg.228, ln.7-17.

Mr. Cox received a discharge on July 27, 2010.  Based upon the estimated time records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total of 6.6 hours to Mr. Cox's bankruptcy case, of which 3.5 hours were attributed to pre-petition work and 3.1 hours were attributed to post-petition work. COLL. TRIAL EX. 97.  Of the post-petition hours, Mr. Burroughs testified at trial that .9 of an hour was actual attorney time.[34]  Of the total $1,250.00 fee received post-petition, the receipt entered into evidence reflects a balance due of $0.00.  TRIAL EX. 68.

### Charles Allen Hoffman
### (Case No. 10-30181)

On December 15, 2009, Charles Allen Hoffman retained Clark & Washington to represent him in the filing of his Chapter 7 bankruptcy case, executing in association with this representation the second post-*Waldo* Engagement Contract. COLL. TRIAL EX. 51; *see also* TRIAL EX. 101.  As to the specific fees for services to be rendered in the filing of his bankruptcy case, Mr. Hoffman's Engagement Contract contains the following terms:

Client agrees to pay the following fees:

I.  Pre-Petition Fees and Services:

. . . .

---

[34] Mr. Cox paid the entire $1,250.00 fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $403.23 for the 3.1 post-petition hours, including the 0.9 of an hour of actual attorney time estimated by Mr. Burroughs to have been spent on his case.

b. The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of $150.00.

. . . .

II.  Post-Petition Fees and Services:

a.  Retainer.  As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case.  The retainer shall consist of post-dated checks in the total amount of $500.00.

5 @ 100.00[35]

COLL. TRIAL EX. 51.  At that time and in accordance with the payment options offered, Mr. Hoffman tendered to Clark & Washington, as payment of the $650.00 attorneys' fee provided for by his Engagement Contract, $150.00 along with five post-dated checks from his father, Carl Hoffman,[36] in the amount of $100.00 for deposit into Clark & Washington's operating account on March 1, 2010,  April 1, 2010, May 1, 2010, June 1, 2010, and July 1, 2010, respectively.  JT. STIPS. ¶¶ 1-2; TRIAL EX. 52.  Clark & Washington did not specifically instruct Mr. Hoffman to incur debt to pay his fees but advised that he could finance the fee for a period of time after the case was filed through post-dated checks.  JT. STIPS. ¶ 3.

---

[35] These figures are handwritten on Mr. Hoffman's contract.

[36] All of the documents filed by Clark & Washington with the court state that Mr. Hoffman's fees were paid by "Karla Hoffman;" however, Mr. Hoffman testified at his meeting of creditors that the post-dated checks, in fact, came from his father, Carl Hoffman.  COLL. TRIAL EX. 51 pg.5, ln.23-pg.6, ln.4.

The Voluntary Petition commencing Mr. Hoffman's Chapter 7 bankruptcy case was filed on January 18, 2010.[37]  Filed contemporaneously with the Voluntary Petition was Mr. Hoffman's Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy that his $650.00 attorneys' fee was paid by Mr. Hoffman on January 15, 2010.  COLL. TRIAL EX. 48.  This information is not, however, reflected on the Compensation Disclosure Statement executed and filed by Mr. Burroughs on January 18, 2010, which disclosed total compensation of $650.00, with $150.00 paid and a balance due of $500.00 to be paid "by third party, Karla Hoffman, via post-dated checks in the amount of $100 each on 3/1/10, 4/1/10, 5/1/10, 6/1/10, 7/1/10." COLL. TRIAL EX. 49.  The Compensation Disclosure Statement also reflected the following in paragraphs 6 and 7:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
> > a. [Other provisions as needed]
> > no limitation except as set forth in paragraph 7 below.
> > (i).  Other provisions:  This fee for pre-petition services is a flat fee in the amount of $150.00.  The fee for post-Petition services shall be capped at $500.00, and charged at a blended rate of $165 per hour.  Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $ n/a.
>
> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
> > a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.
> > b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs

---

[37] *See supra* n.8.  Mr. Hoffman executed his documents on December 15, 2009, but the Voluntary Petition is dated January 18, 2010, the date upon which his case was filed.  *See* COLL. TRIAL EX. 48.

> Attorney that Client does not wish to litigate the matter, Client affirmatively
> declines Attorney's representation, Client obtains other counsel, or Attorney
> is allowed to withdraw by the Court.

COLL. TRIAL EX. 49.   On February 1, 2010, Mr. Burroughs filed an amended Compensation Disclosure Statement dated January 29, 2010, with the paragraph 6 language deleted in its entirety. COLL. TRIAL EX. 49.

Mr. Burroughs also filed an amended Statement of Financial Affairs on Mr. Hoffman's behalf on February 3, 2010, listing at question 9 the individual $100.00 checks tendered to Clark & Washington by "Karla Hoffman" dated March 1, 2010, and $150.00 on April 1, 2010, May 1, 2010, June 1, 2010, and July 1, 2010, the dates upon which the post-dated checks were to be deposited. TRIAL EX. 50.   The amended Statement of Financial Affairs contains the Debtor's electronic signature but was filed by Mr. Burroughs without first obtaining Mr. Hoffman's original signature. JT. STIPS. ¶ 4.

Mr. Hoffman attended his meeting of creditors on February 23, 2010, at which time the attorney for the U.S. Trustee questioned him concerning his fee arrangement with Clark & Washington as follows:

> Q.  Okay.  Did you understand that the fees for these – the thousand dollars[38] that
> you paid was partly for work that they did before the bankruptcy was filed and partly
> for work that they did after the bankruptcy was filed?
>
> A.  Yeah, the way I understood it.
>
> Q.  Tell me about what you understood.

---

[38] The total attorney fee paid by Mr. Hoffman was $650.00; however, he also paid the $299.00 filing fee and the costs for obtaining his pre-petition credit counseling briefing and post-petition financial management course, which totals approximately $1,000.00 for the entire amount paid to Clark & Washington.

A.  The money was to take care of this bankruptcy mess I'm in.

Q.  Did you think the thousand dollars was to pay all of it?

A.  Yeah.

Q.  To take care of everything?  Okay.  Did anybody ever tell you that – that if – if the time they spent on your bankruptcy didn't amount to a thousand dollars worth of work that you might get some money back?

A.  No.  I didn't know nothing about that.

COLL. TRIAL EX. 51 pg.8, ln.25-pg.9, ln.17.  With respect as to why he paid his fees with third-party post-dated checks, Mr. Hoffman stated that he was unemployed and could not pay the attorneys' fees without assistance from his father.  COLL. TRIAL EX. 51 pg.6, ln.5-23.

Mr. Hoffman received a discharge on May 7, 2010.  Based upon the estimated time records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total of 5.6 hours to Mr. Hoffman's bankruptcy case, of which 3.3 hours were attributed to pre-petition work and 2.3 hours were attributed to post-petition work.[39]  COLL. TRIAL EX. 97.  Of the post-petition hours, Mr. Burroughs testified at trial that .8 of an hour was actual attorney time.[40]  Of the total $1,250.00 fee, two post-dated checks, each in the amount of $100.00, was deposited by Clark & Washington post-discharge, and the receipt entered into evidence reflects a balance due of $0.00. JT. STIPS. ¶ 6; TRIAL EX. 52.

---

[39] The attachment to Mr. Burroughs's Affidavit for Mr. Hoffman's case reflects a total of 5.8 hours, but that figure also includes 0.2 of an hour for collecting and receipting attorney fees.

[40] Mr. Hoffman paid $500.00 of his fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $217.39 for the 2.3 post-petition hours, including the 0.8 hour of actual attorney time estimated by Mr. Burroughs to have been spent on his case.

**Carl Dean Luttrell, Jr. and Sherry Renee Luttrell**
**(Case No. 10-30275)**

On December 5, 2009, Carl Dean Luttrell, Jr. and Sherry Renee Luttrell retained Clark & Washington to represent them in the filing of their Chapter 7 bankruptcy case, executing in association with this representation the second post-*Waldo* Engagement Contract. TRIAL EX. 61; *see also* TRIAL EX. 101. As to the specific fees for services to be rendered in the filing of their bankruptcy case, the Luttrells' Engagement Contract contains the following terms:

> Client agrees to pay the following fees:
>
> I. Pre-Petition Fees and Services:
>
> . . . .
>
> b. The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of $150.00.
>
> . . . .
> II. Post-Petition Fees and Services:
>
> a. Retainer. As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case. The retainer shall consist of post-dated checks in the total amount of $1,100.00.

TRIAL EX. 61. At that time and in accordance with the payment options offered, the Luttrells tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by their Engagement Contract, $150.00 along with six post-dated checks from Sheila Coffey, each in the amount of $157.14, for deposit into Clark & Washington's operating account on February 18, 2010, March 18, 2010, April 18, 2010, May 18, 2010, June 18, 2010, and July 18, 2010, respectively, and

one post-dated check in the amount of $157.16 to be deposited on August 18, 2010. Jt. Stips. ¶¶ 1- 2; Trial Ex. 62. Clark & Washington did not specifically instruct the Luttrells to incur debt to pay their fees but advised that they could finance the fee for a period of time after the case was filed through post-dated checks. Jt. Stips. ¶ 3.

The Voluntary Petition commencing the Luttrells' Chapter 7 bankruptcy case was filed on January 25, 2010.[41] Coll. Trial Ex. 58. Filed contemporaneously with the Voluntary Petition was the Luttrells' Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy that their $1,250.00 attorneys' fee was paid by the Luttrells on January 14, 2010. Coll. Trial Ex. 58. This information is not, however, reflected on the Compensation Disclosure Statement executed and filed by Mr. Burroughs on January 25, 2010, which disclosed total compensation of $1,250.00, with $150.00 paid and a balance due of $1,100.00 to be paid "by third party, Sheila Coffey, via post-dated checks in the amount of $157.14 each on 2/18/10, 3/18/10, 4/18/10, 5/18/10, 6/18/10, 7/18/10, and $157.16 on 8/18/10." Coll. Trial Ex. 59. The Compensation Disclosure Statement also reflected the following in paragraphs 6 and 7:

> 6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>> a. [Other provisions as needed]
>> no limitation except as set forth in paragraph 7 below.
>> (i). Other provisions: This fee for pre-petition services is a flat fee in the amount of <u>$150.00</u>. The fee for post-Petition services shall be capped at <u>$1,100.00</u>, and charged at a blended rate of $165 per hour.

---

[41] *See supra* n.8. The Luttrells executed their documents on December 5, 2009, but the Voluntary Petition is dated January 25, 2010, the date upon which their case was filed. *See* Coll. Trial Ex. 58.

Debtor has provided counsel a retainer for the post-Petition services in the form of post-dated checks in the total amount of $ n/a.

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.

b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 59.  On February 1, 2010, Mr. Burroughs filed an amended Compensation

Disclosure Statement dated January 29, 2010, with the paragraph 6 language deleted in its entirety.

COLL. TRIAL EX. 59.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of the Luttrells

on February 3, 2010, listing at question 9 the $150.00 paid to Clark & Washington on January 14,

2010, the six individual checks to be paid to Clark & Washington from Sheila Coffey of $157.14 on

February 18, 2010, March 18, 2010, April 18, 2010, May 18, 2010, June 18, 2010, and July 18, 2010,

and the $157.16 check to be paid on August 18, 2010, the dates upon which the post-dated checks

were to be deposited.  TRIAL EX. 60.  The amended Statement of Financial Affairs contains the

Debtors' electronic signatures but was filed by Mr. Burroughs without first obtaining the Luttrells'

handwritten signatures.  JT. STIPS. ¶ 4.

The Luttrells attended their meeting of creditors on March 2, 2010, at which time the attorney

for the U.S. Trustee questioned them concerning their fee arrangement with Clark & Washington.

69

In response to the U.S. Trustee's request that they explain, in their own words, how they were to pay their attorneys' fees, the Luttrells testified as follows:

A. [Mr. Luttrell]  We paid them so much up front – do you remember exactly?  Was it $500?

A. [Ms. Luttrell]  Yes, it was $500.

A. [Mr. Luttrell]  $300 and something of it was for the filing, I think.

Q.  The filing fee?

A. [Mr. Luttrell]  Uh-huh.  And then $150 was for them.  And then we had arrangements to pay by check, third party check –

A. [Ms. Luttrell]  Third party.

A. [Mr. Luttrell]  – seven –

A. [Ms. Luttrell]  Post-dated.

A. [Mr. Luttrell]  – post-dated checks.

Q.  And what were the amount of those third-party checks?

A. [Ms. Luttrell]  $157.

Q.  $157 for seven months?

A. [Ms. Luttrell]  Yes.

A. [Mr. Luttrell]  The total came up to like $1,500, I think.  Somewhere in that neighborhood, with what we paid down and the checks.

Q.  When you made this payment arrangement, was it ever explained to you how much was for the work that was done before the case was filed and then how much work was done for after the case was filed?

A. [Mr. Luttrell]  Not really, that I understand.  I mean, I thought it was for the –

A. [Ms. Luttrell]  The total amount.

70

A. [Mr. Luttrell]  – the total.

Q. So was it more they said it's $1,500, and here's how you're going to pay it, you're going to pay this much up front, and then we need the rest in post-dated checks?

A. [Mr. Luttrell]  Yes.

Q. So you weren't explained, well, we're going to charge you $500 for coming to this meeting of creditors or anything of that nature?

A. [Ms. Luttrell]  No.

Q. As far as you knew, it's just a flat fee?

A. [Ms. Luttrell]  Yes.

A. [Mr. Luttrell]  Yes, as far as we knew.

Trial Ex. 63 pg.47, ln.7-pg.48, ln.25.  With respect to the pre-petition/post-petition nature of the

fees, they also testified to the following:

Q. Has your attorney agreed to reimburse you or the third party for any amount that they don't bill toward?  Because – because basically what your contract says, I believe, is that $150 is – is for the work that was done up front, and then there's another $1,100 that's going to be done for work after your case is filed, in the form of a retainer, which basically is like a deposit.  So if that deposit's not used up, have they told you that they're going to give you back any of that money?

A. [Mr. Luttrell]  No.

A. [Ms. Luttrell]  No.

A. [Mr. Luttrell]  We wasn't told we would be getting any money back.  Basically that –

A. [Ms. Luttrell]  This would be paid.

A. [Mr. Luttrell]  Our understanding, it was a flat fee pretty much.

Q. And was –

A. [Ms. Luttrell]  Bankruptcy, for filing bankruptcy for us.

71

. . . .

Q. Do you have any idea what the hourly rate, what your attorney is charging for this meeting today?

A. [Mr. Luttrell]  None whatsoever.

Q. Right, because you just thought it was a flat fee.

A. [Mr. Luttrell]  Yes.

TRIAL EX. 63 pg.51, ln.8-pg.52, ln.2; pg.53, ln.10-15.

As to why they used third-party post-dated checks, the Luttrells testified that they were advised by Clark & Washington that post-dated checks from debtors could no longer be accepted for payment of attorneys' fees and the firm would require payment in full up front or third party post-dated checks, so Ms. Coffey, Ms. Luttrell's sister, provided them with the post-dated checks. TRIAL EX. 63 pg.49, ln.1-21. The Debtors also testified that Clark & Washington would have held the checks and exchanged them for cash, but that they chose to let Ms. Coffey's checks go through and had, in fact, repaid Ms. Coffey $157.00. TRIAL EX. 63 pg.49, ln.22-pg.50, ln.9.

The Luttrells received a discharge on May 11, 2010. Based upon the estimated time records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total of 5.5 hours to the Luttrells' bankruptcy case, of which 3.3 hours were attributed to pre-petition work and 2.2 hours were attributed to post-petition work. COLL. TRIAL EX. 97. Of the post-petition hours, Mr. Burroughs testified at trial that 1.0 hour was actual attorney time.[42] Of the total $1,250.00 fee,

---

[42] The Luttrells paid $1,100.00 of their fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $500.00 for the 2.2 post-petition hours, including the 1.0 hour of actual attorney time estimated by Mr. Burroughs to have been spent on their case.

at least two post-dated checks in the amount of $157.14 were deposited by Clark & Washington

post-discharge, and the receipt entered into evidence reflects a balance due of $0.00.  JT. STIPS. ¶ 6;

TRIAL EX. 62.

## Cynthia Lea Vittetoe
### (Case No. 10-30326)

On January 19, 2010, Cynthia Lea Vittetoe retained Clark & Washington to represent her in

the filing of her Chapter 7 bankruptcy case, executing in association with this representation the

second post-*Waldo* Engagement Contract.  TRIAL EX. 73; *see also* TRIAL EX. 101.  As to the specific

fees for services to be rendered in the filing of her bankruptcy case, Ms. Vittetoe's Engagement

Contract contains the following terms:

> Client agrees to pay the following fees:
>
> I.  Pre-Petition Fees and Services:
>
> . . . .
>
> b.  The balance of the pre-Petition fee covers the remaining services required to assist
> Client in obtaining their required credit counseling certificate, gathering necessary
> information and documents, advising Client regarding the legal issues involved in
> Client's case, advising Client of the upcoming process, advising Client of their
> responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings.
> The fee for these services is a flat fee of <u>$150.00</u>.
>
> . . . .
>
> II.  Post-Petition Fees and Services:
>
> a.  <u>Retainer</u>.  As a condition of representation in this case, Client agrees to pay
> Attorney a retainer for services to be rendered post-Petition in Client's case.  The
> retainer shall consist of post-dated checks in the total amount of <u>$1,100.00.</u>

TRIAL EX. 73.  At that time and in accordance with the payment options offered, Ms. Vittetoe

tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by her

Engagement Contract, five post-dated checks from Mrs. David Vittetoe, each in the amount of

$233.80, for deposit into Clark & Washington's operating account on February 22, 2010, March 22,

2010, April 22, 2010, May 22, 2010, and June 22, 2010, respectively.  JT. STIPS. ¶ 1-2; TRIAL EX.

74. Clark & Washington did not specifically instruct Ms. Vittetoe to incur debt to pay her fees but

advised that she could finance the fees for a period of time after the case was filed through post-dated

checks.  JT. STIPS. ¶ 3.

The Voluntary Petition commencing Ms. Vittetoe's Chapter 7 bankruptcy case was filed on

January 27, 2010.[43]  Filed contemporaneously with the Voluntary Petition was Ms. Vittetoe's

Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to

debt counseling or bankruptcy that a $131.00 attorneys' fee was paid by Ms. Vittetoe on January 19,

2010.  COLL. TRIAL EX. 70.  This information is not, however, reflected on the Compensation

Disclosure Statement executed and filed by Mr. Burroughs on January 27, 2010, which disclosed

total compensation of $1,250.00, with $131.00 paid and a balance due of $1,119.00 to be paid "by

third party, Mrs. David Vittetoe, via post-dated checks in the amount of $223.80 each on 2/22/10,

3/22/10, 4/22/10, 5/22/10, 6/22/10."  COLL. TRIAL EX. 71.  The Compensation Disclosure Statement

also reflected the following in paragraphs 6 and 7:

> 6.  In return for the above-disclosed fee, I have agreed to render legal service for all
> aspects of the bankruptcy case, including:

---

[43] *See supra* n.8.  Ms. Vittetoe executed her documents on January 19, 2010, but the Voluntary Petition is dated
January 27, 2010, the date upon which her case was filed.  *See* COLL. TRIAL EX. 70.

a. [Other provisions as needed]
no limitation except as set forth in paragraph 7 below.
(i).  Other provisions:  This fee for pre-petition services is a flat fee
in the amount of $131.00.  The fee for post-Petition services shall be
capped at $1,119.00, and charged at a blended rate of $165 per hour.
Debtor has provided counsel a retainer for the post-Petition services
in the form of post-dated checks in the total amount of $  n/a.

7.  By agreement with the debtor(s), the above-disclosed fee does not include the
following service:
a.  These fees do not include certain costs associated with this case.  Client
will be responsible for all court costs, credit counseling costs, and the costs
to obtain Client's credit report.
b.  The contract between the parties does not include fees for representing
Client in adversary proceedings.  If Client is served with an adversary
proceeding complaint, Attorney shall take appropriate steps to protect and
represent Client's best interests until such time as either Client informs
Attorney that Client does not wish to litigate the matter, Client affirmatively
declines Attorney's representation, Client obtains other counsel, or Attorney
is allowed to withdraw by the Court.

COLL. TRIAL EX. 71.  On February 1, 2010, Mr. Burroughs filed an amended Compensation

Disclosure Statement dated January 29, 2010, with the paragraph 6 language deleted in its entirety.

COLL. TRIAL EX. 71.

Mr. Burroughs also filed an amended Statement of Financial Affairs on behalf of Ms.

Vittetoe on February 3, 2010, listing at question 9 the $131.00 payment received by Clark &

Washington from the Debtor on January 19, 2010, and the five individual $223.80 checks to be paid

to Clark & Washington by Mrs. David Vittetoe dated February 22, 2010, March 22, 2010, April 22,

2010, May 22, 2010, and June 22, 2010, the dates upon which the post-dated checks were to be

deposited.  COLL. TRIAL EX. 72.  The amended Statement of Financial Affairs contains the Debtor's

electronic signature but was filed by Mr. Burroughs without first obtaining Ms. Vittetoe's original

signature.  JT. STIPS. ¶ 4.

75

Ms. Vittetoe attended her meeting of creditors on March 2, 2010, at which time the attorney for the U.S. Trustee questioned her concerning her fee arrangement with Clark & Washington as follows:

> Q.  Okay.  And did you – do you recognize the terms that were listed here which says, in number 1, pre-petition fees and services, that you were charged $150, and then post-petition fees and services were charged at a hundred – $1,010 – $1,100, do you recall that?
>
> A.  Yes.
>
> Q.  Okay.  So did you understand that you were going to pay part of it pre-petition and part of it post-petition?
>
> A.  Yes.

TRIAL EX. pg.104, ln.12-22.  As to whether Clark & Washington told her that she would get money back if her case did not take the amount of time to equal to $1,100.00, Ms. Vittetoe testified that she did not remember but that she had been told she would receive an accounting of her fees at the end of her case.  TRIAL EX. 75, pg.113, ln.6-pg.114, ln.5.

When questioned about using third party post-dated checks, Ms. Vittetoe testified that she was given the option of either paying the attorneys' fees in full up front or through third party post-dated checks.  TRIAL. EX. 75 pg.111, ln.7-112, ln.13.  She also testified that her mother-in-law provided her with the post-dated checks at her husband's request but that the money was never intended as a gift and she is repaying the amount of each check before it clears the bank.  TRIAL EX. 75 pg.108, ln.22-pg.109, ln.5; pg.110, ln.7-pg.111, ln.6.

Ms. Vittetoe has not received a discharge because she has not filed a Certificate of Debtor Education certifying that she has completed the required post-petition personal financial management

76

course.  Based upon the estimated time records prepared by Clark & Washington and attached to Mr.

Burroughs's Affidavit, the firm devoted a total of 7.2 hours to Ms. Vittetoe's bankruptcy case, of

which 3.8 hours were attributed to pre-petition work and 3.4 hours were attributed to post-petition

work.[44]  COLL. TRIAL EX. 97.  Of the post-petition hours, Mr. Burroughs testified at trial that .9 of

an hour was actual attorney time.[45]  Of the total $1,250.00 fee, the receipt entered into evidence

reflects a balance due of $0.00.  TRIAL EX. 74.

### Joseph Charles McGee and April Dawn McGee
### (Case No. 10-30353)

Joseph Charles McGee and April Dawn McGee retained Clark & Washington to represent

them in the filing of their Chapter 7 bankruptcy case, executing in association with this

representation the second post-*Waldo* Engagement Contract, which was signed by Ms. McGee on

December 22, 2009, and by Mr. McGee on January 23, 2010.  COLL. TRIAL EX. 83; *see also* TRIAL

EX. 101.  As to the specific fees for services to be rendered in the filing of their bankruptcy case, the

McGees' Engagement Contract contains the following terms:

Client agrees to pay the following fees:

I.  Pre-Petition Fees and Services:

. . . .

b.  The balance of the pre-Petition fee covers the remaining services required to assist
Client in obtaining their required credit counseling certificate, gathering necessary

---

[44] The attachment to Mr. Burroughs's Affidavit for Ms. Vittetoe's case reflects a total of 7.4 hours, but that figure also includes 0.2 of an hour for collecting and receipting attorney fees.

[45] Ms. Vittetoe paid $1,119.00 of her fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $329.12 for the 3.4 post-petition hours, including the 0.9 hour of actual attorney time estimated by Mr. Burroughs to have been spent on her case.

information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of $150.00.

. . . .

II.  Post-Petition Fees and Services:

a.  Retainer.  As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case.  The retainer shall consist of post-dated checks in the total amount of $1,100.00.

COLL. TRIAL EX. 83.  At that time and in accordance with the payment options offered, the McGees tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by their Engagement Contract, $31.00 along with a check from Wayne Sulphin in the amount of $1,219.00 for deposit into Clark & Washington's operating account on January 27, 2010.  JT. STIPS. ¶¶ 1-2; COLL. TRIAL EX. 83.  Clark & Washington did not specifically instruct the McGees to incur debt to pay their fees but advised that they could finance the fee for a period of time after the case was filed through post-dated checks.  JT. STIPS. ¶ 3.

The Voluntary Petition commencing the McGees' Chapter 7 bankruptcy case was filed on January 28, 2010.[46]  Filed contemporaneously with the Voluntary Petition was the McGees' Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy that their $31.00 attorneys' fee was paid by the McGees on January 23, 2010, and $1,219.00 was paid by Wayne Sulphin on January 26, 2010.  COLL. TRIAL EX. 80.  This information is inaccurately reflected on the Compensation Disclosure Statement executed

---

[46] See supra n.8.  The McGees executed their documents on December 22, 2009 and January 23, 2010, but the Voluntary Petition is dated January 28, 2010, the date upon which their bankruptcy case was filed.  See COLL. TRIAL EX. 83.

and filed by Mr. Burroughs on January 28, 2010, which disclosed total compensation of $1,250.00,

with $31.00 paid and a balance due of $1,219.00, with the source of compensation "$31.00 paid by

debtor and $1,219.00 paid by Wayne Sulphin." COLL. TRIAL EX. 81. The Compensation Disclosure

Statement also reflected the following in paragraph 7:

> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the
> following service:
>
>> a.  These fees do not include certain costs associated with this case. Client
>> will be responsible for all court costs, credit counseling costs, and the costs
>> to obtain Client's credit report.
>> b.  The contract between the parties does not include fees for representing
>> Client in adversary proceedings. If Client is served with an adversary
>> proceeding complaint, Attorney shall take appropriate steps to protect and
>> represent Client's best interests until such time as either Client informs
>> Attorney that Client does not wish to litigate the matter, Client affirmatively
>> declines Attorney's representation, Client obtains other counsel, or Attorney
>> is allowed to withdraw by the Court.

COLL. TRIAL EX. 81. On February 1, 2010, Mr. Burroughs filed an amended Compensation

Disclosure Statement dated February 1, 2010, containing the same information as the previously filed

Compensation Disclosure Statement. COLL. TRIAL EX. 81.


The McGees attended their meeting of creditors on March 1, 2010, at which time the attorney

for the U.S. Trustee questioned them concerning their fee arrangement with Clark & Washington,

with Ms. McGee testifying as follows:

> Q.  Okay. And do you recall discussing with your attorneys any financial
> arrangements that you could make for the payment of your – of your bankruptcy?
>
> A.  Like what do you mean by payment of bankruptcy, the payment that we paid to
> them?
>
> Q.  Yeah, your attorney fees.

A.  Oh, yes, uh-huh.

Q.  Okay.  It shows here on your Attorney/Client Agreement that your agreement was to pay them $150 for pre-petition services.  Is that correct?

A.  Yes.

Q.  And then post-petition services you were to pay $1,100.  Okay.  What sort of services did – did that include, the pre-petition services?

A.  Just everything that they did as far as the paperwork when we came in and went through – we went through everything with them, and they did their things that they needed to do.

Q.  Did they quote you just a general price that it would cost to do your bankruptcy?

A.  Yes.

Q.  And how much was that?

A.  Altogether it was, I mean, including everything, court fees and everything, it ended up being like $1,650.

Q.  Right.  But for the attorney fees, do you recall what that was?

A.  I think altogether it was $1,250 or something like that.

TRIAL EX. 82, pg.4, ln.15-pg.5, ln.18.

With respect to actual payment of their attorneys' fees, Ms. McGee testified that she had borrowed the money from her father, Wayne Sulphin, who was originally going to do the post-dated checks but instead gave her one check for payment of the entire $1,219.00, which was paid to Clark & Washington on January 26, 2010.  TRIAL EX. 82, pg.7, ln.12-pg.8, ln.25.  She also testified that she intends to pay Mr. Sulphin back eventually and that she was not advised by Clark & Washington that the pre-petition debt to her father was dischargeable.  TRIAL EX. 82, pg.10, ln.2-17.

Following the McGees' meeting of creditors on March 1, 2010, the U.S. Trustee filed the

Motion of United States Trustee to Compel the Attorneys for the Debtors to Amend the Disclosure

of Compensation and for Sanctions and Notice of Hearing, arguing that the Disclosures filed by Mr.

Burroughs and Clark & Washington did not accurately reflect their fee arrangement or the fact that

the fee had been paid entirely pre-petition. In response to the U.S. Trustee's motion, later that same

afternoon, Mr. Burroughs filed a second Amended Compensation Disclosure Statement, reflecting

a total fee of $1,250.00, pre-petition receipt of $1,250.00, and a balance due of $0.00. COLL. TRIAL

EX. 81.

The McGees received a discharge on May 7, 2010. Based upon the estimated time records

prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total

of 6.6 hours to the McGees' bankruptcy case, of which 3.3 hours were attributed to pre-petition work

and 3.3 hours were attributed to post-petition work. COLL. TRIAL EX. 97. Of the post-petition hours,

Mr. Burroughs testified at trial that .9 of an hour was actual attorney time.[47] Of the total $1,250.00

fee, the receipt entered into evidence reflects a balance due of $0.00. COLL. TRIAL EX. 83.

### Natasha Olivia Womble
### (Case No. 10-30382)

On December 17, 2009, Natasha Olivia Womble retained Clark & Washington to represent

her in the filing of her Chapter 7 bankruptcy case, executing in association with this representation

the second post-*Waldo* Engagement Contract. TRIAL EX. 55; *see also* TRIAL EX. 101. As to the

---

[47] The McGees paid $1,219.00 of their fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $369.39 for the 3.3 post-petition hours, including the 0.9 hour of actual attorney time estimated by Mr. Burroughs to have been spent on their case.

specific fees for services to be rendered in the filing of her bankruptcy case, Ms. Womble's

Engagement Contract contains the following terms:

> Client agrees to pay the following fees:
>
> I. Pre-Petition Fees and Services:
>
> . . . .
>
> b. The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of <u>$150.00</u>.
>
> . . . .
>
> II. Post-Petition Fees and Services:
>
> a. <u>Retainer</u>. As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case. The retainer shall consist of post-dated checks in the total amount of <u>$1,100.00.</u>

TRIAL EX. 55. At that time and in accordance with the payment options offered, Ms. Womble

tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by her

Engagement Contract, $151.00 and five post-dated checks from Deborah Womble, four each in the

amount of $220.00 for deposit into Clark & Washington's operating account on February 22, 2010,

March 25, 2010, April 25, 2010, and May 25, 2010, and one in the amount of $219.00 to be

deposited on June 25, 2010, respectively. JT. STIPS. ¶ 1-2; TRIAL EX. 56. Clark & Washington did

not specifically instruct Ms. Womble to incur debt to pay her fees but advised that she could finance

the fee for a period of time after the case was filed through post-dated checks. JT. STIPS. ¶ 3.

The Voluntary Petition commencing Ms. Womble's Chapter 7 bankruptcy case was filed on January 30, 2010.[48]   Filed contemporaneously with the Voluntary Petition was Ms. Womble's Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy that her $1,099.00 attorneys' fee was paid by the third party payor, Deborah Womble, through post-dated payments.  COLL. TRIAL EX. 53.  This information is not, however, reflected on the Compensation Disclosure Statement executed by Mr. Burroughs on January 29, 2010 and filed on January 30, 2010, which disclosed total compensation of $1,250.00, with $151.00 paid and a balance due of $1,099.00 to be paid "by third party, Deborah Womble, via post dated checks in the amount of $220.00 each on 2/25/10, 3/25/10, 4/25/10, 5/25/10, and $219 on 6/25/10."  COLL. TRIAL EX. 53.  The Compensation Disclosure Statement also reflected the following in paragraph 7:

> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>
>> a.  These fees do not include certain costs associated with this case.  Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.
>> b.  The contract between the parties does not include fees for representing Client in adversary proceedings.  If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 53.

---

[48] *See supra* n.8.  Ms. Womble executed her documents on December 17, 2009, but the Voluntary Petition is dated January 30, 2010, the date upon which her case was filed.  *See* COLL. TRIAL EX. 53.

Mr. Burroughs filed an amended Statement of Financial Affairs on March 23, 2010, on behalf of Ms. Womble listing at question 9 the $151.00 received by Clark & Washington from Ms. Womble on January 25, 2010, and the five $220.00 checks paid to Clark & Washington by Deborah Womble dated February 25, 2010, March 25, 2010, April 25, 2010, and May 25, 2010, and the $219.00 check dated June 25, 2010, the dates upon which the post-dated checks were to be deposited. TRIAL EX. 54. The amended Statement of Financial Affairs contains the Debtor's electronic signatures but was filed by Mr. Burroughs without first obtaining Ms. Womble's handwritten signature. JT. STIPS. ¶ 4.

Ms. Womble attended her meeting of creditors on March 1, 2010, at which time the attorney for the U.S. Trustee questioned her concerning her fee arrangement with Clark & Washington. In response to the U.S. Trustee's inquiry as to payment of the attorneys' fees, Ms. Womble testified as follows:

A. They – I don't remember what the total fee was. I want to say it was $1,200. I'm sorry, that's been a couple of months ago, so I'm really pulling from my memory.

Q. Does $1,250 sound like the number?

A. Yes.

Q. Okay.

A. And they said that – originally they said that I could make the post-dated checks, but then when I came and saw them at the start of the year again, they said that those would have to come from a third party.

. . . .

Q. Okay. And so did you borrow some money from Deborah Womble?

A. Uh-huh.

. . . .

Q.  Okay.  So did you sign a loan document with Ms. Womble?

A.  No.

Q.  Is that your sister?

A.  My mother.

Q.  Your mother.  And what was your agreement with your mother about paying her back?

A.  I just pay her when her check clears.

. . . .

Q.  Okay.  And so –

A.  She was just temporarily being the liaison in order to accommodate with the ruling that the judge had brought down, using her check; so basically it's not – it's her money that's initially coming out, but she's getting it right back, so –

Q.  Okay.

A.  Does that make sense?  So it's really my money, but hers has been the – I guess the carrier for it to get done.

Q.  Okay.  Did she – did she sign an agreement with Clark & Washington?

A.  No.

Q.  – saying that she would be liable for this?  Did she sign an agreement with you?

A.  No.

Q.  Okay.  But you – did she understand that if you didn't pay her the money, the checks would still clear the bank –

A.  Yes.

Q.  – that she would be responsible for that?

A.  Yes.

Q.  Okay.  So it was like a loan.

A.  I suppose.

Q.  Okay.  All right.  And is your mother – your mother listed as a creditor on your bankruptcy petition?  Did I ask you that?

A.  No, but I don't think that she is.

TRIAL EX. 57 pg.32, ln.5-pg.35, ln.13.

Ms. Womble received a discharge on May 7, 2010.  Based upon the itemized records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total of 6.6 hours to Ms. Womble's bankruptcy case, of which 4.0 hours were attributed to pre-petition work and 2.6 hours were attributed to post-petition work.[49]  COLL. TRIAL EX. 97.  Of the post-petition hours, Mr. Burroughs testified at trial that .5 of an hour was actual attorney time.[50]  Of the total $1,250.00 fee, one post-dated check in the amount of $220.00 and one post-dated check in the amount of $219.00 were deposited by Clark & Washington post-discharge, and the receipt entered into evidence reflects a balance due of $0.00.  JT. STIPS. ¶ 6; TRIAL EX. 56.

**Gary Steven Aaron, II**
**(Case No. 10-30442)**

On January 23, 2010, Gary Steven Aaron, II retained Clark & Washington to represent him in the filing of his Chapter 7 bankruptcy case, executing in association with this representation the

---

[49]  The attachment to Mr. Burroughs's Affidavit for Ms. Womble's case reflects a total of 6.8 hours, but that figure also includes 0.2 of an hour for collecting and receipting attorney fees.

[50]  Ms. Womble paid $1,099.00 of her fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $422.69 for the 2.6 post-petition hours, including the 0.5 hour of actual attorney time estimated by Mr. Burroughs to have been spent on her case.

second post-*Waldo* Engagement Contract.  COLL. TRIAL EX. 77; *see also* TRIAL EX. 101.  As to the

specific fees for services to be rendered in the filing of his bankruptcy case, Mr. Aaron's Engagement

Contract contains the following terms:

> Client agrees to pay the following fees:
>
> I.  Pre-Petition Fees and Services:
>
> . . . .
>
> b.  The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of $150.00.
>
> . . . .
>
> II.  Post-Petition Fees and Services:
>
> a.  <u>Retainer</u>.  As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case.  The retainer shall consist of post-dated checks in the total amount of $1,100.00.

COLL. TRIAL EX. 77.  At that time and in accordance with the payment options offered, Mr. Aaron

tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by his

Engagement Contract, five post-dated checks from James Carey, each in the amount of $250.00 for

deposit into Clark & Washington's operating account on March 11, 2010, April 15, 2010, May 13,

2010, June 10, 2010, and July 15, 2010, respectively.  JT. STIPS. ¶ 1-2; TRIAL EX. 78.  Clark &

Washington did not specifically instruct Mr. Aaron to incur debt to pay his fees but advised that he

could finance the fee for a period of time after the case was filed through post-dated checks.  JT.

STIPS. ¶ 3.

The Voluntary Petition commencing Mr. Aaron's Chapter 7 bankruptcy case was filed on February 5, 2010.[51] Filed contemporaneously with the Voluntary Petition was Mr. Aaron's Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to debt counseling or bankruptcy that his $1,250.00 attorneys' fee was paid by the third party payor, James Carey, through post-dated payments. COLL. TRIAL EX. 76. This information is likewise reflected on the Compensation Disclosure Statement executed by Mr. Burroughs on February 4, 2010, and filed on February 5, 2010, which disclosed total compensation of $1,250.00, with $0.00 paid and a balance due of $1,250.00 to be paid "by third party, James Carey, via post dated checks in the amount of $250.00 each on 3/11/10, 4/15/10, 5/13/10, 6/10/10, 7/15/10." COLL. TRIAL EX. 76. The Compensation Disclosure Statement also reflected the following in paragraph 7:

> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
>> a.  These fees do not include certain costs associated with this case. Client will be responsible for all court costs, credit counseling costs, and the costs to obtain Client's credit report.
>> b.  The contract between the parties does not include fees for representing Client in adversary proceedings. If Client is served with an adversary proceeding complaint, Attorney shall take appropriate steps to protect and represent Client's best interests until such time as either Client informs Attorney that Client does not wish to litigate the matter, Client affirmatively declines Attorney's representation, Client obtains other counsel, or Attorney is allowed to withdraw by the Court.

COLL. TRIAL EX. 76.

---

[51] *See supra* n.8. Mr. Aaron executed his documents on January 23, 2010, but the Voluntary Petition is dated February 5, 2010, the date upon which his case was filed. *See* COLL. TRIAL EX. 76.

Mr. Aaron attended his meeting of creditors on March 9, 2010, at which time the attorney

for the U.S. Trustee questioned him concerning his fee arrangement with Clark & Washington, with

Mr. Aaron testifying as follows:

> Q.  Did – did they tell you – when you talked to them about what the fee would be, did they tell you that they would be billing you by the hour after the case was filed, or did they say there was just one fee for the whole bankruptcy?

> A.  Just one – just one set fee for the whole bankruptcy.

TRIAL EX. 79 pg.166, ln.17-23.  With respect to his options for payment of the attorneys' fees, Mr.

Aaron testified to the following:

> Q.  And so when you met with them did they talk to you about how you could pay your fees?

> A.  Yes.

> Q.  Okay.  And what were – what did they tell you about that?

> A.  They told me I could pay it third-party by having, you know, one of my relatives give them five checks, they can put it through the bank or I could come up there and pay them off as – as they come due, three days before they come due.

> Q.  Okay.  They told you – did you – did you – did the third – was the third party named James Carey?

> A.  Yes, ma'am.

> Q.  And did Mr. Carey give you the money or did he loan you the money?

> A.  He loaned me the checks.

> Q.  He loaned you the checks?

> A.  Yes.

> Q.  Did – what was your intent about the checks?

> A.  I'd pay them off before – you know, go ahead and pay them off as I – you know.

Q. Did Clark & Washington tell you that you could arrange it that way, where you'd come up and pick up the checks before they were cashed?

A. Yeah.

Q. Okay. They told you. Were they aware that you were just borrowing these checks –

A. Yeah.

Q. – from Mr. Carey?

A. Yeah.

TRIAL EX. 79 pg.164, ln.4-pg.165, ln.9. He also testified that he was required to bring the post-dated checks before his case would be filed. TRIAL EX. 79 pg.166, ln.24-pg.167, ln.3.

Mr. Aaron received a discharge on May 25, 2010. Based upon the estimated time records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total of 4.9 hours to Mr. Aaron's bankruptcy case, of which 3.3 hours were attributed to pre-petition work and 1.6 hours were attributed to post-petition work.[52] COLL. TRIAL EX. 97. Of the post-petition hours, Mr. Burroughs testified at trial that .9 of an hour was actual attorney time.[53] Of the total $1,250.00 fee, one payment in the amount of $250.00 was deposited by Clark & Washington post-discharge, and the receipt entered into evidence reflects a balance due of $0.00. JT. STIPS. ¶ 6; TRIAL EX. 78.

---

[52] The attachment to Mr. Burroughs's Affidavit for Mr. Aaron's case reflects a total of 5.2 hours, but that figure also includes 0.2 of an hour for receipting Mr. Aaron's replacement of a check with cash and 0.1 of an hour for time attributable to these contested matters.

[53] Mr. Aaron paid the entire $1,250.00 fee for post-petition services which, based upon the estimated time records, translates to an hourly rate of $781.25 for the 1.6 post-petition hours, including the 0.9 hour of actual attorney time estimated by Mr. Burroughs to have been spent on his case.

**Kalenda Faye Knight**
**(Case No. 10-30444)**

On January 16, 2010, Kalenda Faye Knight retained Clark & Washington to represent her in the filing of her Chapter 7 bankruptcy case, executing in association with this representation the second post-*Waldo* Engagement Contract.  TRIAL EX. 45; *see also* TRIAL EX. 101.  As to the specific fees for services to be rendered in the filing of her bankruptcy case, Ms. Knight's Engagement Contract contains the following terms:

> Client agrees to pay the following fees:
>
> I.  Pre-Petition Fees and Services:
>
> . . . .
>
> b.  The balance of the pre-Petition fee covers the remaining services required to assist Client in obtaining their required credit counseling certificate, gathering necessary information and documents, advising Client regarding the legal issues involved in Client's case, advising Client of the upcoming process, advising Client of their responsibilities as a debtor, and preparing and filing Client's bankruptcy pleadings. The fee for these services is a flat fee of <u>$150.00</u>.
>
> . . . .
>
> II.  Post-Petition Fees and Services:
>
> a.  <u>Retainer</u>.  As a condition of representation in this case, Client agrees to pay Attorney a retainer for services to be rendered post-Petition in Client's case.  The retainer shall consist of post-dated checks in the total amount of <u>$1,100.00.</u>

COLL. TRIAL EX. 45.  At that time and in accordance with the payment options offered, Ms. Knight tendered to Clark & Washington, as payment of the $1,250.00 attorneys' fee provided for by her Engagement Contract, five post-dated checks from Catrina Woods, each in the amount of $250.00 for deposit into Clark & Washington's operating account on February 26, 2010, March 26, 2010,

91

April 23, 2010, May 21, 2010, and June 18, 2010, respectively.  JT. STIPS. ¶ 1-2; TRIAL EX. 46.

Clark & Washington did not specifically instruct Ms. Knight to incur debt to pay her fees but advised

that she could finance the fee for a period of time after the case was filed through post-dated checks.

JT. STIPS. ¶ 3.

The Voluntary Petition commencing Ms. Knight's Chapter 7 bankruptcy case was filed on

February 5, 2010.[54]  Filed contemporaneously with the Voluntary Petition was Ms. Knight's

Statement of Financial Affairs, reflecting in response to question 9 concerning payments related to

debt counseling or bankruptcy that her $1,250.00 attorneys' fee was paid by the third party payor,

Catrina Woods, through post-dated payments.  COLL. TRIAL EX. 44.  This information is likewise

reflected on the Compensation Disclosure Statement executed by Mr. Burroughs on January 29,

2010, and filed on February 5, 2010, which disclosed total compensation of $1,250.00, with $0.00

paid and a balance due of $1,250.00 to be paid "by third party, Catrina Woods, via post-dated checks

in the amount of $250.00 each on 2/26/10, 3/26/10, 4/23/10, 5/21/10, & 6/18/10."  COLL. TRIAL EX.

44.  The Compensation Disclosure Statement also reflected the following in paragraph 7:

> 7.  By agreement with the debtor(s), the above-disclosed fee does not include the
> following service:
>> a.  These fees do not include certain costs associated with this case.  Client
>> will be responsible for all court costs, credit counseling costs, and the costs
>> to obtain Client's credit report.
>> b.  The contract between the parties does not include fees for representing
>> Client in adversary proceedings.  If Client is served with an adversary
>> proceeding complaint, Attorney shall take appropriate steps to protect and
>> represent Client's best interests until such time as either Client informs
>> Attorney that Client does not wish to litigate the matter, Client affirmatively

---

[54] *See supra* n.8.  Ms. Knight executed her documents on January 16, 2010, but the Voluntary Petition is dated
February 5, 2010, the date upon which her case was filed.  *See* COLL. TRIAL EX. 44.

> declines Attorney's representation, Client obtains other counsel, or Attorney
> is allowed to withdraw by the Court.

COLL. TRIAL EX. 44.

Ms. Knight attended her meeting of creditors on March 9, 2010, at which time, the attorney

for the U.S. Trustee questioned her concerning her fee arrangement with Clark & Washington.  In

response to the U.S. Trustee's questions, Ms. Knight testified to the following:

> Q.  Okay.  So when you signed this contract, did you read this contract to know what
> it said?
>
> A.  She explained it to me then, yeah.
>
> Q.  Okay.  Did she explain to you that you had to pay $150 before your case was
> filed, for your – for your attorney fees, not for the $349?
>
> A. [Ms. Woods[55]]  She said that was in with, that's what the fees was to file the case,
> file the bankruptcy.
>
> Q.  That $349?
>
> A.  Yes.
>
> Q.  Okay.  But after that, did you understand that you had an attorney fee of $1250
> to pay?
>
> A. [Ms. Woods]  Yes.  And that's what they did, that – she said that they can divide
> it up into monthly payments.
>
> Q.  Right.  But when this contract that you signed, Ms. Knight, says that you paid
> $150, where you were to pay that pre-petition, you didn't do that, did you?  Now,
> we're not talking about the $349, we're talking about the $1,250.  None of that was
> paid prior to the case being filed, is that correct?
>
> [Mr. Burroughs]  The $1,250 was in five post-dated checks, right?

---

[55] During the examination of the Debtor, Kalenda Knight, at her meeting of creditors on March 9, 2010, her
mother, Katrina Woods, who was also present during the Debtor's consultation with representatives of Clark &
Washington, was sworn in and testified as to those events.

93

A. [Ms. Woods]  Yeah.  And they took one post-dated check out of my account.

Q.  And that would be in February?

A. [Ms. Woods]  Yes.

Q.  Right.  And so they've not given you back $150?

A. [Ms. Woods]  No, ma'am.

. . . .

Q.  Right.  And then there's four more to go.  Is that correct?  But when you talked to them, did you understand that the fee for the bankruptcy was going to be billed separately for the – for after it was filed at $165 an hour, or did you think that your fee was, for the whole bankruptcy $1,250?

A. [Ms. Woods]  $1,250.  She didn't say nothing about no hourly wages pay, I mean.

Q.  Okay.  So the woman you talked to didn't tell you that?

A.  She explained it and then she said, "Sign here for me."

A. [Ms. Woods]  Yeah, but she did not state –

A.  She didn't hand me them to read, Mama, she just read it to me.

A. [Ms. Woods]  She did, but I'm going to tell you, I know – now, I can't – it's her word against mine, but I know she did not state that any hourly of $165 whatever that is you said, she did not say that.

Q.  Okay.

A. [Ms. Woods]  All she said was the fees that was left after the $349 was $1,200 or whatever.

Q.  $1,250.

A.  $1,250, whatever these five post-dated checks would add up to.

Q.  Okay.

94

A. [Ms. Woods]  $1,250, right, correct.

Q. And that was to do the whole bankruptcy.

A. [Ms. Woods]  Right.

TRIAL EX. 47 [Tr. Knight 341 mtg] at pg. 158, line 8- pg.161, line 5.

Ms. Knight received a discharge on May 17, 2010.  Based upon the estimated time records prepared by Clark & Washington and attached to Mr. Burroughs's Affidavit, the firm devoted a total of 5.2 hours to Ms. Knight's bankruptcy case, of which 3.4 hours were attributed to pre-petition work and 1.8 hours were attributed to post-petition work.  COLL. TRIAL EX. 97.  Of the post-petition hours, Mr. Burroughs testified at trial that 1.0 hour was actual attorney time.[56]  Of the total $1,250.00 fee, two post-dated checks, each in the amount of $250.00, were deposited by Clark & Washington post-discharge, and the receipt entered into evidence reflects a balance due of $0.00.  JT. STIPS. ¶ 6; TRIAL EX. 46.

## II

The Pretrial Order sets forth a number of issues which, for the purposes of this memorandum, can be divided into two distinct categories:  the appropriateness of Clark & Washington's fee arrangements and the accuracy of the firm's filings with the court, to be followed by a third subsection addressing the imposition of sanctions.

---

[56] Ms. Knight paid the entire $1,250.00 fee post-petition which, based upon the estimated time records, translates to an hourly rate of $694.44 for the 1.8 post-petition hours, including the 1.0 hour of actual attorney time estimated by Mr. Burroughs to have been spent on her case.  That estimation not withstanding, at trial, Mr. Burroughs also identified the "KB" referenced in the estimated time records as having spent the one hour of attorney time meeting with Ms. Knight and her mother as Katherine Brown, who was a non-licensed attorney.  *See supra* n.22.

A

The first set of issues focuses upon Clark & Washington's practices concerning its engagement and fee arrangement with its clients.  Specifically, whether the post-*Waldo* engagement contracts and fee arrangements employed by Clark & Washington and implemented by Mr. Burroughs as managing attorney for its Knoxville office constitute true "straddle" arrangements for the division of pre- and post-petition fees and services in compliance with the directives of *Waldo*.[57]

One of the primary issues in *Waldo* was whether or not the engagement contract and fee arrangement between Clark & Washington and the respective debtors under the terms of which the firm collected, pre-petition, post-dated checks drawn on debtor accounts for deposit post-petition constituted pre-petition debts, subject to discharge.  After analyzing case law from this jurisdiction, as well as others, this court concluded that "the attorneys' fees in each case [were] flat fees which arose pre-petition, irrespective of when services were to be rendered."  *Waldo*, 417 B.R. at 883; *see also In re Griffin*, 313 B.R. 757, 762-63 (Bankr. N.D. Ill. 2004) ("Under the Bankruptcy Code, a contract-based claim is a pre-petition claim if prior to filing[,] the relationship between the debtors and the creditor contained all the necessary elements to create a right to payment under the relevant contract.").  This court went on to then state the following:

> [A]cceptance of post-dated checks for payment of "flat-fee" or "no-look" attorney's
> fees is not an acceptable practice and runs afoul of the Bankruptcy Code and Federal
> Rules of Bankruptcy Procedure, [and finds] the division of a flat fee arrangement into
> pre-petition and post-petition parts to be conceptually inconsistent and therefore

---

[57] The parties have stipulated that the contract used in the Soles case was a pre-*Waldo* contract and in violation of the court's directives therein. Jт. Stips. ¶ 7.  At trial, Mr. Burroughs testified that the pre-*Waldo* engagement contract was mistakenly used; however, the Soleses' Engagement Contract was executed on October 22, 2009, prior to entry of the *Waldo* decision, but the case itself was filed post-*Waldo*, on December 14, 2009.  *See* Trial Ex. 41.

untenable.  The Court therefore joins those other courts which hold that when a flat or fixed fee pre-petition agreement is at issue, the fee must be paid in full prior to the commencement of the debtor's case or the fee is discharged under § 727(b).

*Waldo*, 417 B.R. at 882, 885 (quoting *In re Mansfield*, 394 B.R. 783, 791 (Bankr. E.D. Pa. 2008)).

In summary, this court held that "because 'flat fee' or 'no-look' attorney's fees contracted for pre-petition are dischargeable, it is unacceptable for attorneys to ask for and receive post-dated checks from Debtors to be cashed post-petition as payment of those fees."  *Waldo*, 417 B.R. at 886.

Recognizing, however, that attorneys should be compensated for the services they provide, this court, at the conclusion of the *Waldo* opinion, gave the following three examples of potentially allowable methods for payment of attorneys' fees in Chapter 7 cases:  "(1) requiring Chapter 7 debtors to pay 'flat' or 'no-look' attorney's fees in full prior to filing; (2) revising retainer agreements and expressly designating pre-petition services, which are paid pre-petition, and post-petition services, which shall be paid post-petition; or (3) accepting payments by third parties." *Waldo*, 417 B.R. at 895.

Immediately following entry of the *Waldo* decision, Mr. Thomson drafted the initial post-*Waldo* contract, and Mr. Crawford, the managing attorney of the Knoxville office at that time, instructed the Knoxville office to stop taking post-dated debtor checks.  That practice was resumed, however, after Mr. Crawford left the firm in November 2009, and Mr. Burroughs was instructed by the Atlanta office to begin taking post-dated debtor checks once again under the post-*Waldo* "straddle" contract, continuing until January 2010, when Mr. Clark instructed the Knoxville office

to only take post-dated third party checks.[58]  Additionally, Mr. Burroughs testified that although the Knoxville office ceased collecting post-dated checks written on debtor accounts, it continued depositing post-dated checks received prior to entry of the *Waldo* decision and it has continued depositing post-dated checks written on debtor accounts in its possession.

In support of Clark & Washington's post-*Waldo* "straddle" contract, Mr. Thomson testified that in the immediate aftermath of the *Waldo* opinion, he instructed all of the Knoxville offices not to take post-dated debtor checks for a few days and began drafting a revised engagement contract that provided for receipt of post-dated checks pre-petition in contemplation of post-petition services while correcting the major three problems pointed out by the court.  To that end, the initial and second post-*Waldo* engagement contracts both remove a statement that attorneys' fees are non-refundable, remove all carve-outs other than for adversary proceedings and amendments, segregate pre-petition and post-petition services, add language advising that pre-petition debts are subject to discharge, and add language that debtors may consult other counsel concerning the acceptability of post-dated checks.  *See* TRIAL EX. 100; TRIAL EX. 101.  These contracts also provided for debtors to pay a minimal flat fee, usually $150.00, when the contract was signed, with that amount designated for pre-petition services, and to pay the remaining balance of the fees due via post-dated checks, with that amount designated for post-petition services.  *See* TRIAL EX. 100; TRIAL EX. 101. These are the engagement contracts executed by all of the Debtors in these contested matters with the exception of the Soleses, who executed the pre-*Waldo* contract.

---

[58] Amanda Stofan, managing attorney for Clark & Washington's Chattanooga office, testified that the "straddle" contract was used in Chattanooga from November 2009 through the end of April 2010, at which time that office stopped taking debtor post-dated checks as payment for its attorneys' fees.

In spite of the assertions by Mr. Thomson, Mr. Clark, Mr. Burroughs, and Ms. Stofan to the contrary, neither of the post-*Waldo* engagement contracts is a true "straddle" agreement and neither complies with *Waldo*.  Regardless of Clark & Washington's purported attempt to bifurcate the attorneys' fees into pre- and post-petition services, the fact remains that each of the Engagement Contracts in these fifteen cases was entered into pre-petition, as was the obligation for payment. Each Engagement Contract is prefaced with the phrase, "Client agrees to pay the following fees" and then fixes the liability of the respective Debtors at the full amount of the pre- and post-petition figures inserted into the respective Engagement Contracts.  As stated in *Waldo*, "[i]f these arrangements were true 'saddle obligations' as argued by Clark & Washington and Mr. Crawford, they would not collect post-dated checks pre-petition in anticipation of post-petition services but would, instead, seek payment for post-petition services as rendered post-petition." *Waldo*, 417 B.R. at 883-84.  The engagement contracts themselves, as well as the testimony at trial can lead to no other conclusion – these are "flat fee" contracts.

The post-*Waldo* engagement contracts attempt to bifurcate fees, advising clients that they have paid their "minimal flat fee" for pre-petition fees[59] and that they, "[a]s a condition of representation," have agreed to pay "a retainer for services to be rendered post-petition" to consist of post-dated checks totaling the remaining amount. *See* COLL. TRIAL EX. 4; TRIAL EX. 9; TRIAL EX. 15; TRIAL EX. 22; COLL. TRIAL EX. 29; TRIAL EX. 35; TRIAL EX. 45; COLL. TRIAL EX. 51; TRIAL EX. 55; TRIAL EX. 61; TRIAL EX. 67; TRIAL EX. 73; COLL. TRIAL EX. 77; COLL. TRIAL EX. 83; TRIAL EX.

---

[59] With the exception of the Lawsons, for whom the entire $800.00 paid was stated to be their "flat fee," and the Harts, for whom the "flat fee" was stated to be $201.00, the "flat fee" for the remaining Debtors executing post-*Waldo* engagement contracts was stated to be $150.00.

100; TRIAL EX. 101.  The engagement contracts then go on to provide that the retainer will be applied to post-petition services and "is based upon a blended hourly rate of $165" with the fees "capped at the amount of the retainer listed above, regardless of the amount of services expended in excess thereof" and that "[t]he parties contemplate that the value of the post-petition services rendered . . . shall meet or exceed the total amount of the quoted retainer."  *See* COLL. TRIAL EX. 4; TRIAL EX. 9; TRIAL EX. 15; TRIAL EX. 22; COLL. TRIAL EX. 29; TRIAL EX. 35; TRIAL EX. 45; COLL. TRIAL EX. 51; TRIAL EX. 55; TRIAL EX. 61; TRIAL EX. 67; TRIAL EX. 73; COLL. TRIAL EX. 77; COLL. TRIAL EX. 83; TRIAL EX. 100; TRIAL EX. 101.  Clients are then advised that they are "entitled to request a final accounting of the fees charged by Attorney in this case and thereafter receive a refund of any amount of the retainer paid in excess of the post-petition services rendered."  *See* COLL. TRIAL EX. 4; TRIAL EX. 9; TRIAL EX. 15; TRIAL EX. 22; COLL. TRIAL EX. 29; TRIAL EX. 35; TRIAL EX. 45; COLL. TRIAL EX. 51; TRIAL EX. 55; TRIAL EX. 61; TRIAL EX. 67; TRIAL EX. 73; COLL. TRIAL EX. 77; COLL. TRIAL EX. 83; TRIAL EX. 100; TRIAL EX. 101.

Despite the foregoing language in the engagement contracts, although attorneys and staff in the Knoxville office are required to keep track of the services performed by logging their activities in a database as or soon after services are rendered, neither the attorneys nor the paralegals contemporaneously record incremental time allotments with those logged entries.  JT. STIPS. ¶ 5. Additionally, Clark & Washington does not routinely provide itemized statements or accountings of post-petition services to debtors.  In fact, Mr. Burroughs testified that only one debtor has asked for an accounting and only after an inquiry by the U.S. Trustee's office.  Ms. Stofan testified that

none of the firm's Chattanooga clients has requested an accounting, nor has that office ever provided a client with an itemized statement of services rendered.  Jt. Stips. ¶ 9.

As for what each of the Debtors understood, their testimony clearly evidences that each of them thought that they were paying a flat fee for their bankruptcy case.  When asked how much Clark & Washington was going to charge for doing the pre-petition work and how much would be charged for the post-petition work, Ms. Lawson testified that it wasn't specified that a certain amount would be designated for either, but that "[t]hey just said everything would be in that $800.00. Everything would be included in that."  Coll. Trial Ex. 11 [K. Lawson] at pg.15, ln.11-22; pg.18, ln.15-pg.19, ln.6.  Similarly, Ms. Newman testified that she did not realize she would be charged different amounts for the work performed by Clark & Washington pre-petition and post-petition, that she understood the entire fee to cover everything.  Trial Ex. 30 pg.213, ln.4-11.  Ms. Dickerson testified that she understood that the attorney fee would cover their whole bankruptcy.  Trial Ex. 17 pg.187, ln.17-pg.188, ln.10.  Ms. Zick testified that she simply thought the cost of her bankruptcy was a thousand or so dollars.  Trial Ex. 25 pg.13, ln.1-8.  Ms. Woods' mother testified that she and her daughter understood the fee to be $1,250.00 for the entire bankruptcy case.  Trial Ex. 47 pg.160, ln.22-pg.161, ln.5.  Ms. Sanchez testified that she and Mr. Sanchez were actually quoted $1,250.00 as the entire fee for filing their case by the person they met with at Clark & Washington, as did Mr. Cox, Mr. Hoffman, Ms. Vittetoe, the McGees, and Ms. Womble,  Trial Ex. 37 pg.11, ln.6-19; Trial Ex. 69 pg.220, ln.5-20; Coll. Trial Ex. 51 pg.9, ln.9-11; Trial Ex. 75 pg.106, ln.1-8; Trial Ex. 82 pg.5, ln.8-18; Trial Ex. 57 pg.32, ln.5-14.  Additionally, Mr. Aaron testified at his meeting

101

of creditors that all he remembered was that he had to pay $350.00 in advance plus provide post-dated checks totaling $1,250.00.  TRIAL EX. 79 pg.163, ln.14-pg. 164, ln.14.

When questioned about the retainer at trial, Mr. Burroughs testified that, pursuant to the terms of the engagement contracts, any unused portions should be refunded.  He then stated, however, that Clark & Washington attorneys and paralegals do not keep track of their time and do not bill at an hourly rate and that the firm has not returned any unused retainers to debtors. Additionally, Mr. Burroughs testified that the Debtors were aware, on the dates they signed their contracts, the total amount of attorneys' fee to be charged, inclusive of both the $150.00 pre-petition fee and the agreed upon post-petition "retainer" in the form of post-dated checks, and that receipt of payment in full of that retainer, through post-dated debtor or third-party checks, was a condition of and prerequisite to Clark & Washington filing any debtor's case.  Similarly, Mr. Thomson testified that each Debtors' obligation to pay the entire amount of fees arose at the time the contract was executed and if not paid, the non-paying debtors would have been in breach of contract.

With respect to his Affidavit introduced into evidence as Trial Exhibit 97, Mr. Burroughs testified that he did not personally compile the time records attached thereto, but that paralegals in his firm estimated the time amounts based upon notes contained in a database kept by Clark & Washington, after which Mr. Burroughs reviewed the records and made revisions.  No time records were kept within the database, and all time entries were based on estimates assigned by the paralegals who prepared the attachments.  His testimony was corroborated by Ms. Stofan, who testified that although the "straddle" contract provides for a blended hourly rate of $165.00 for attorneys and paralegals, she has never established an hourly rate and does not keep time records.

Significantly, the time estimates were prepared pursuant to the court's directives set forth in the Pretrial Order entered on May 14, 2010, and not periodically as each case progressed. The $165.00 "blended hourly rate" allegedly charged by Clark & Washington for post-petition services appears to be nothing more than a convenient figure to be utilized in estimating the post-petition fees in the unlikely event a debtor should request an accounting. However, as evidenced by the court's calculations set forth earlier in each Debtors' factual section, the $165.00 "blended hourly rate" is merely a fiction. Clearly, Clark & Washington never intended to account to these Debtors for the unused portion of any attorneys' fee.

Mr. Thomson's and Mr. Burroughs' s testimony that the "straddle" contract provides a true breakdown between pre- and post-petition fees is also contradicted by the receipts issued to the respective debtors in each case which contains a blocked-off section providing the following information:

> PERSONAL CHECK POLICY:
> 1. Checks are verified prior to filing your case
> 2. Your case will not be filed until the full amount due is paid in advance
> 3. No personal checks if you have NSF Debts
> 4. There will be a $25.00 charge for each returned check
> 5. No out of state or starter checks
> 6. All fees paid are not refundable

COLL. TRIAL EX. 4; TRIAL EX. 10; TRIAL EX. 16; TRIAL EX. 23; COLL. TRIAL EX. 29; TRIAL EX. 36;TRIAL EX. 42; TRIAL EX. 46; TRIAL EX. 52; TRIAL EX. 56; TRIAL EX. 62; TRIAL EX. 68; TRIAL EX. 74; TRIAL EX. 78; COLL. TRIAL EX. 83.[60] The receipts, with the exception of the Harts' and McGees', contradicts Mr. Burroughs's testimony that Clark & Washington's Knoxville office does not pursue

---

[60] Items 4 and 6 are not a part of the PERSONAL CHECK POLICY contents set forth in the receipts issued by Clark & Washington to the Harts and the McGees. COLL. TRIAL EX. 4; COLL. TRIAL EX. 83.

its clients for payment on post-dated checks returned for insufficient funds. Also, with the exception of the *Hart* and *McGee* cases, item 6 contravenes the provision in each Engagement Contract that "Client is entitled to . . . receive a refund of any amount of the retainer paid in excess of the value of the post-Petition services rendered." *See* TRIAL EX. 9; TRIAL EX. 15; TRIAL EX. 22; COLL. TRIAL EX. 29; TRIAL EX. 35; TRIAL EX. 45; COLL. TRIAL EX. 51; TRIAL EX. 55; TRIAL EX. 61; TRIAL EX. 67; TRIAL EX. 73; COLL. TRIAL EX. 77; TRIAL EX. 100; TRIAL EX. 101.

With respect to post-dated checks received from debtors and written on debtor accounts, the message in *Waldo* is clear: "It is not proper for a bankruptcy attorney to accept post-dated checks from a Chapter 7 debtor client, and the use of [this] method of fee payment has been consistently rejected by bankruptcy courts." *Waldo*, 417 B.R. at 886 (citations omitted). Under no type of contract will the court condone acceptance of post-dated checks from debtors written on their accounts, to be cashed post-petition, as payment of attorneys' fees. As discussed in detail, "there are serious ethical implications in such a practice," raising "the question and the appearance" of a conflict of interest between Clark & Washington and the affected debtors. *Waldo*, 417 B.R. at 886-87.[61] Clark & Washington's attempts to camouflage its flat fee by bifurcating it into a minimal pre-

---

[61] Specifically, *Waldo* states the following:

As raised by many of the courts examining the issue of post-dated checks, there are serious ethical implications in such a practice, and the same is true here – that by accepting post-dated checks for dischargeable debts and not advising their clients that the debts were at least potentially dischargeable, Clark & Washington and Mr. Crawford created a conflict of interest with the Debtors under Tennessee's disciplinary rules. Rule 1.8(a) of the Rules of Professional Conduct states, in material part, as follows:

**Rule 1.8 Conflict of Interest; Prohibited Transactions.**

(a) A lawyer shall not . . . knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(continued...)

petition amount and a much larger post-petition amount is disingenuous at best, especially in light of the evidence that in none of the cases presently before the court did the assigned time for services rendered come anywhere close to equaling the "retainer" amount multiplied by the $165.00 "blended hourly rate."

The court also finds the practice of accepting post-dated checks from third parties to be suspect and borderline violative of the Bankruptcy Code's prohibition on advising debtors to incur debt in anticipation of filing for bankruptcy.  Section 526(a) states that debt relief agencies – including attorneys – shall not do any of the following:

> (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

> (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under

---

[61](...continued)

> (1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client; and

> (2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

> (3) The client consents thereto in a writing signed by the client.

TENN. SUP. CT. R. 8, Rule 1.8(a).  As stated in the official comments to Rule 1.8, "[a]s a general principle, all transactions between client and lawyer should be fair and reasonable to the client.  In such transactions, a review by independent counsel on behalf of the client is advisable.  Furthermore, a lawyer may not exploit information relating to the representation to the client's disadvantage."  OFF. CMTS., TENN. SUP. CT. R. 8, Rule 1.8(a).  Accordingly, "[t]he existence of a conflict of interest does not require bad motive or intent.  Most often it arises where the attorney's duty to one client conflicts with his/her duty to another or with the attorney's self-interest."  *In re Martin*, 197 B.R. 120, 128 (Bankr. D. Colo. 1996).

*Waldo*, 417 B.R. 886.

this title, that is untrue and misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

(3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to –

(A) the services that such agency will provide to such person; or

(B) the benefits and risks that may result if such person becomes a debtor in a case under this title; or

(4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526(a); *see* 11. U.S.C. § 101(12A) (2006) (defining "debt relief agency" in material part as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration[.]"); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1332 (2010). In *Milavetz*, the Supreme Court held that "§ 526(a)(4)[, which is best understood to provide an additional safeguard against the practice of loading up on debt prior to filing,] prohibits a debt relief agency only from advising a debtor to incur more debt because the debtor is filing for bankruptcy, rather than for a valid purpose." *Milavetz*, 130 S. Ct. at 1336.

Without finding conclusively that Clark & Washington has violated § 526(a)(4), the court is nevertheless troubled by the acceptance of third-party post-dated checks. With respect to the firm's procedure concerning third party checks, Mr. Burroughs testified that debtors are advised that they can ask a family member or neighbor to "gift" them the attorneys' fee, with the understanding that there is no requirement for the debtors to repay them, but that he never advised clients to take out a pre-petition loan from any source to fund the attorneys' fees. He also testified that there is no

pre-petition, dischargeable debt owed to the third parties because the fee is earned and paid post-petition.  Likewise, Mr. Thomson argued that acceptance of third-party post-dated checks, as well as any attempts to collect upon them, does not violate *Waldo* because §§ 362(a) and 524(a) do not apply to such payments made by third parties.

Messrs. Burroughs and Thomson's testimony, however, contradicts testimony offered by the various Debtors with respect to what was intended when they were advised by Clark & Washington to tender third-party post-dated checks.  For example, Ms. Lawson testified that she and her husband are reimbursing Mr. Perlioni, the family friend who wrote the post-dated checks for their bankruptcy case, with cash and that he never intended to 'gift' them the money or to pay for their attorneys' fees. COLL. TRIAL EX. 11 [K. Lawson] pg.8, ln.10-pg.10, ln.9.  Similarly, Mr. Cox testified that his girlfriend provided the post-dated checks but it was never intended that she would pay for his bankruptcy case.  TRIAL EX. 69 pg.223, ln.13-22; pg.230, ln.18-pg.231, ln.9.  Likewise, Ms. Vittetoe testified that her mother-in-law had provided the post-dated checks, but she and Mr. Vittetoe were repaying her the $223.80 prior to each check clearing the bank, TRIAL EX. 75 pg.108, ln.22-pg.109, ln.5; pg.110, ln.7-pg.111, ln.6, and Ms. Womble testified that she had agreed to repay her mother, from whom she had received the post-dated checks, when each one cleared the bank.  Trial Ex. 57, pg.33, ln.14-21.

Even more telling as to the true nature of these third-party payments, the Luttrells testified to the following:

Q.  So your attorneys told you you couldn't write your own post-dated checks?

107

A. [Ms. Luttrell]  At first, when we met with them in December, they said that we could do our own post-dated checks, but when we met with them again in January they said that that was not going to work anymore, that we could either, I guess, I don't know if they said we could pay it all up front –

A. [Mr. Luttrell]  Yeah, we could pay it up front –

A. [Ms. Luttrell]  – or we could do third-party.

A. [Mr. Luttrell]  – or we could do third-party.

A. [Ms. Luttrell]  And that's what we chose.

A. [Mr. Luttrell]  And they would hold the checks and we could bring the money in and they would, you know, get the check – we could get the checks back or whatever.

A. [Ms. Luttrell]  Or they would shred them through.

. . . .

A. [Mr. Luttrell]  So we just let them run them through and we pay her sister.

Q.  And have you paid her sister any payments yet?

A. [Mr. Luttrell]  Yes.

A. [Ms. Luttrell]  Yes.  One check's went through and we paid for it.

Trial Ex. 63, pg.49, ln.10-pg.50, ln.9.  Similarly, Mr. Aaron testified to the following:

Q.  And so when you met with them did they talk to you about how you could pay your fees?

A.  Yes.

Q.  Okay.  And what were – what did they tell you about that?

A.  They told me I could pay it third-party by having, you know, one of my relatives give them five checks, they can put it through the bank or I could come up there and pay them off as – as they come due, three days before they come due.

Q.  Okay.  They told you – did you – did you – did the third – was the third party named James Carey?

A.  Yes, ma'am.

Q.  And did Mr. Carey give you the money or did he loan you the money?

A.  He loaned me the checks.

Q.  He loaned you the checks?

A.  Yes.

Q.  Did – what was your intent about the checks?

A.  I'd pay them off before – you know, go ahead and pay them off as I – you know.

Q.  Did Clark & Washington tell you that you could arrange it that way, where you'd come up and pick up the checks before they were cashed?

A.  Yeah.

Q.  Okay.  They told you.  Were they aware that you were just borrowing these checks –

A.  Yeah.

Q.  – from Mr. Carey?

A.  Yeah.

TRIAL EX. 79 pg.164, ln.4-pg.165, ln.9.  In fact, as can be gleaned from the Debtors' testimony, it appears that not only did Clark & Washington know that many – if not a majority – of debtors using third-party checks were, in fact, repaying those third parties, but Clark & Washington, through its attorneys and staff, were instructing debtors to bring in post-dated checks from third-parties while advising them that, if they so desired, the debtors themselves could come in and replace the post-dated checks with cash prior to the dates upon which the checks were to be deposited.

To state it plainly, the court finds that a pre-petition contract which fixes or predetermines the total amount of the fee a debtor is required to pay for both pre- and post-petition services establishes a "flat fee" under the authority of Waldo, and the collecting of post-dated checks is prohibited, irrespective of the source.  As discussed, a true "saddle" contract contemplates a billing relationship, wherein services are rendered post-petition and the client is billed an hourly rate post-petition based upon the time spent, after the services have actually been performed.  None of the Engagement Contracts in these contested matters complies with this basic concept and none complies with the court's decision in *Waldo*.[62]

**B**

With respect to the second category, the inaccurate Compensation Disclosure Statements and unsigned Amended Statements of Financial Affairs filed by Clark & Washington, the court finds that although Clark & Washington has acknowledged its mistakes, the fact remains that it did not take the care and attention necessary to ensure that the documents it filed with the court were accurate and properly filed.  The statutory authority and procedural rules relating to the disclosure of compensation were fully addressed in *Waldo*.  The court examined the combined role played by § 329(a) and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure in providing a system for monitoring of attorneys' fees, allowing courts to "carefully scrutinize" compensation paid by debtors and stressed that full and accurate disclosure was "mandatory" and "'[a]nything less than the full

---

[62] Moreover, because the fee arrangements in each of the Debtors' cases constitutes a pre-petition "flat fee" obligation, as the court has previously held, by depositing and/or cashing after discharge any payments – whether by cash or post-dated check – received from or on behalf of any of the Debtors for satisfaction of that fee, Clark & Washington and Mr. Burroughs may have violated the discharge injunction of 11 U.S.C. § 524(a) (2006).  *Waldo*, 417 B.R. at 890.

measure of disclosure' is unacceptable." *Waldo*, 417 B.R. 893 (citations omitted).  As such, it is not necessary for the court to revisit these issues again in great detail other than to reiterate that "[t]he failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Rules, and sanctions may also be imposed for negligent or inadvertent failures to disclose."  *Waldo*, 417 B.R. at 893 (citations omitted).

Clark & Washington and Mr. Burroughs do not deny that they filed inaccurate Rule 2016(b) compensation disclosure statements in the *Lawson*, *Hart*, *Newman*, *Soles*, *Sanchez*, *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, *McGee*, and *Womble* cases.  Mr. Burroughs testified that following entry of the *Hart* show cause order, he discovered errors on several of the Rule 2016(b) Compensation Disclosure Statements, and he filed amended disclosures for all Chapter 7 cases filed by Clark & Washington post-*Waldo* to remove the straddle contract language, which had been inserted on the firm-wide template by its main office in Atlanta.  The court's review of the Compensation Disclosure Statements in these contested matters not only confirms that the original disclosures made by Clark & Washington and Mr. Burroughs in each case were incomplete, but also that, notwithstanding Mr. Burroughs's attempts to correct them, the Amended Compensation Disclosure Statements he filed still do not reflect the true nature of the respective Debtors' Engagement Contracts.  In fact, as of the date of this Memorandum, Clark & Washington and Mr. Burroughs still have not provided full and accurate disclosure of the firm's fee arrangements with some of these Debtors.

111

Mr. Burroughs also testified that he had a conversation with the attorney for the U.S. Trustee, who brought it to his attention that the original Statements of Financial Affairs in many of the cases were inaccurate with respect to question 9, and that following that conversation, he prepared and filed Amended Statements of Financial Affairs on behalf of the Lawsons, the Harts, Ms. Newman, the Soleses, the Sanchezes, the Dickersons, Ms. Zick, the Luttrells, Ms. Vittetoe, and Ms. Womble in an attempt to more accurately reflect the payment arrangements, but in his haste to revise and file the Amended Statements of Financial Affairs, he did not send them to the respective Debtors for execution.    Accordingly, he and Clark & Washington do not deny that they filed the Amended Statement of Financial Affairs on behalf of the Debtors in the *Lawson*, *Newman*, *Soles*, *Sanchez*, *Dickerson*, *Zick*, *Cox*, *Hoffman*, *Luttrell*, *Vittetoe*, and *Womble* cases without first obtaining the Debtors' permission and handwritten signatures as required by section III.A.3 of the Administrative Procedures for Electronic Case Filing, effective May 17, 2005, as amended, which states in material part:

**III.  Electronic Filing**

**A. Signatures**

. . . .

*3. Signature of Debtor on Petition, Lists, Schedules, Statements, and Other Documents*

112

Notwithstanding paragraph 2[63] immediately above, any petition, list, schedule, statement, and amendment thereto that requires the debtor's signature may be filed electronically by a Registered User with the debtor's signature indicated as "/s/" followed by the typed name of the debtor, provided the debtor has actually signed a copy of the document and the filing attorney retains the signed document as required by paragraph 5[64] below.

*4. Attorney Representation*

Electronic filing of a verified document by an attorney is a representation for the purposes of Fed. R. Bankr. P. 9011[65] that the person or persons required to sign and verify the document did in fact sign and verify it before it was filed.

E.D. Tenn. Admin. Procs. at ¶ III.A. *See* Jт. Sтips. ¶ 4.  In explanation, Mr. Burroughs testified that he was merely wanting to fix the errors in Clark & Washington's earlier filings and that it was never his intention to misled the court or the U.S. Trustee by filing the Amended Statements of Financial Affairs without first obtaining the Debtors' handwritten signatures.

---

63

*2. Signatures on Affidavits, Declarations, Verified Documents, and Reaffirmation Agreements*
Except as provided in paragraph 3 immediately below, each affidavit, unsworn declaration under penalty of perjury, verified document, or reaffirmation agreement filed or submitted for filing must contain actual handwritten signatures.  The "/s/" type of signature is not permitted on these types of documents. Registered Users filing such documents should scan and file them electronically after they have been signed (and, in the case of an affidavit, signed by the notary public and affixed with a notarial seal).

E.D. Tenn. Admin. Procs. at ¶ III.A.2.

64

*5. Retention of Documents*
With respect to the documents described in paragraph 3 above, original documents bearing the debtor's actual signature must be maintained in paper form by the filing attorney until two years after the closing of the case.  On request of the court, the attorney must provide such documents for review.

E.D. Tenn. Admin. Procs. at ¶ III.A.5.

65 "When these rules require copies of a signed or verified paper, it shall suffice if the original is signed or verified and the copies are conformed to the original."  FED. R. BANKR. P. 9011(f).

Because there is no dispute that Clark & Washington and Mr. Burroughs filed inaccurate Rule 2016 Compensation Disclosure Statements and improperly and in violation of the Administrative Procedures for Electronic Case Filing, incorporating Rule 9011, the question becomes whether disgorgement is the appropriate sanction or if, as the U.S. Trustee asserts, something harsher is required to deter future noncompliance by Clark & Washington and Mr. Burroughs with respect to all of their filings.[66]

Section 105 outlines certain powers of the court and imposes upon the court a duty to uphold the provisions of the Bankruptcy Code in subsection (a) by authorizing the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a) (2005).  The court may use its § 105(a) equitable powers "in furtherance of the goals of the [Bankruptcy] Code," *Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.)*, 934 F.2d 723, 725 (6th Cir. 1991), and included within the court's § 105(a) powers is the authority to find a party in contempt.  *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n.1 (6th Cir. 2000).  Civil contempt is generally used by courts to coerce an individual into performing or obeying an order of the court and to compensate the party injured by the contemptuous actions.  *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1983); *In re Walker*, 257 B.R. 493, 497 (Bankr. N.D. Ohio 2001) ("Compensatory contempt orders compensate the party harmed by the other party's contemptuous actions; coercive orders seek to cajole the party in contempt to act in the manner desired by the court.") (quoting *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 595 (6th Cir. 1999)).

---

[66] The U.S. Trustee has requested, as additional sanctions, the following:  the disallowance of fees in their entirety, termination of Clark & Washington and Zachary Burroughs' status as Registered Users of the court's electronic case filing system, requiring all attorneys with Clark & Washington to attend continuing legal education courses supplemental to those required by the State of Tennessee, and/or the suspension of Clark & Washington and its attorneys to practice law in the United States Bankruptcy Court for the Eastern District of Tennessee.

"Contempt must be shown by clear and convincing evidence that the alleged contemnor violated a definite and specific court order which required the performance or the nonperformance of an act with knowing of that court order." *In re Ashley*, 2007 Bankr. LEXIS 3639, at *2, 2007 WL 3125128, at *1 (Bankr. N.D. Ohio Oct. 24, 2007) (citing *Walker*, 257 B.R. at 497).    Nevertheless, "[w]illfulness is not an essential element of civil contempt." *In re Crabtree*, 39 B.R. 702, 710 (Bankr. E.D. Tenn. 1984).

Courts are "afforded wide discretion in fashioning an equitable remedy for civil contempt[,]" *McGregor v. Chierico*, 206 F.3d 1378, 1385 n.5 (11th Cir. 2000), and the failure to comply with the disclosure requirements is a sanctionable violation, in itself grounds for disgorgement of fees. *Waldo*, 417 B.R. at 893 (citing cases).  As a result of their inaccurate disclosures in *Waldo*, Clark & Washington was required to disgorge all fees received from the Debtors in those seven cases, making the decision to voluntarily return $123,742.00 in numerous other cases.  And yet, within days after the *Waldo* opinion was entered, Clark & Washington once again began filing inaccurate Rule 2016 Compensation Disclosure Statements which were followed by inaccurate Amended Compensation Disclosure Statements and subsequently by unverified and unauthorized Amended Statements of Financial Affairs.[67]

---

[67] In 2009, Clark & Washington's Knoxville office filed approximately 1,900 Chapter 7 cases in this court's Northern Division, and from January 1 through the date of this Memorandum, Mr. Burroughs and the Knoxville office of Clark & Washington have filed approximately 1,000 Chapter 7 cases in the Northern Division.

## III

Although the majority of these issues were addressed and, in the court's mind, decided in *Waldo*, in order to avoid any further litigation as to what is and what is not allowed concerning fee arrangements in Chapter 7 cases and the disclosure of compensation requirements in all cases filed in the Bankruptcy Court for the Eastern District of Tennessee, Northern Division, the court will summarize, reiterating much of what it has held previously.

First, the Engagement Contracts entered into between Clark & Washington and each of the fifteen Debtors creates a pre-petition obligation for payment of a lump sum or flat fee, and any portion of that lump sum or flat fee not paid to the firm pre-petition has been discharged in fourteen of these cases.  The purported bifurcation of fees for pre- and post-petition services is a fiction, as is the concept that the Debtors paid a retainer to be applied against services rendered based upon the $165.00 "blended hourly rate."  It has been established that Clark & Washington does not maintain time records for its clients and that it only created the estimated time records attached to Mr. Burroughs's Affidavit entered into evidence as Collective Trial Exhibit 97 after being directed to do so by the court.  Additionally, it has been established that the amount of fees charged greatly exceeds the $165.00 "blended hourly rate."  Furthermore, as was evident from the testimony of the respective Debtors, none of them understood that they were to be paying under a bifurcated contract, but instead, each of them understood that the attorneys' fee charged by Clark & Washington was a lump sum they were required to pay for the entire bankruptcy, to be tendered prior to filing.

Second, in order to be a true "straddle" fee arrangement bifurcating pre- and post-petition services, the contract must clearly identify the services to be included within the pre-petition fee and the services to be included within the post-petition fee.  It must also unambiguously disclose, at a minimum, that all pre-petition fees must be paid prior to filing and any unpaid pre-petition fee will be discharged and that all post-petition fees, which are not subject to the discharge, will be billed only when services are rendered and only for the specific amount of time for each activity at an agreed upon hourly rate for attorneys and a considerably lesser agreed upon hourly rate for para-professionals.[68]  Attorneys may accept a pre-petition retainer to be billed against as long as the retainer is held in trust and drawn against as services are rendered, subject to time records being kept and debtors being periodically sent an itemized statement of the work performed and the retainer applied, without having to request the statement.  Additionally, debtors must be made aware that they will receive any unused portion of the retainer once their case is concluded, again, without having to request it themselves.

Third, it is unacceptable for attorneys to ask for and receive post-dated checks from debtors, irrespective of whether the checks are to be drawn on the debtors' personal accounts or a third party's account, and the payment of attorneys' fees through post-dated checks creates a conflict of interest under Rule 1.8(a) of the Tennessee Rules of Professional Responsibility.  Additionally, the post-discharge deposit of any payments received from debtors or on their behalf for pre-petition fees may be, to the extent it could be considered an action to collect on a discharged debt, violative of the discharge injunction of 11 U.S.C. § 524(a).

---

[68] Based upon the court's independent review of compensation disclosure statements in other matters, the average approved hourly rate for para-professionals in this area is $75.00.

Fourth, Clark & Washington and its Knoxville attorneys must file Compensation Disclosure Statements that accurately and fully reflect the fee arrangements with their clients.  In the event the fee contract includes post-petition services, the nature of the anticipated services, hourly billing rate, and billing period should be disclosed.  Additionally, each time an attorney receives post-petition compensation of any kind from or on behalf of a debtor, a supplemental Rule 2016(b) Compensation Disclosure Statement must be filed.

Fifth, before filing any documents signed electronically by debtors, attorneys must have, in their possession, the original document containing the debtors' handwritten signature.

## IV

The court finds that Clark & Washington and Mr. Burroughs have either chosen to ignore the *Waldo* decision or to utilize less than creative methods to circumvent the court's ruling in *Waldo*, not only in these fifteen cases but in other Chapter 7 cases filed in behalf of their debtor-clients since October 27, 2009.  Because the sanction of disgorgement has proved an insufficient deterrent, the court will enhance the sanctions as follows:

1.  Clark & Washington and Mr. Burroughs will, with the exception of the *McGee* case, No. 09-30353, be required to disgorge to the respective Debtors all attorney fees received pre- and post-petition and to return to the Debtors all post-dated checks, whether the Debtor or a third-party was the maker.

118

2.  Clark & Washington and Mr. Burroughs will be required to disgorge $300.00 to Joseph and April McGee in Case No. 10-30353 for their failure to file an accurate Compensation Disclosure Statement.

3.  Clark & Washington and Mr. Burroughs will be sanctioned the sum of $750.00 in all of these cases, with the exception of *McGee*, which sum is to be paid to the Clerk of the court for deposit to the United States Treasury.[69]

4.  Clark & Washington and Mr. Burroughs shall be required to certify their compliance with paragraphs 1, 2, and 3 herein within 30 days.

5.  Clark & Washington and its attorneys representing debtors in Chapter 7 cases hereafter filed in the court's Northern Division, shall, commencing 10 days after the entry of the Orders accompanying this Memorandum, be required to append the following declaration under penalty of perjury as an attachment to the Compensation Disclosure Statement:

> I certify under penalty of perjury that prior to the signing of the employment contract by myself and the debtor[s] I was personally present while the debtor[s] read the contract; that I explained the agreed upon fee arrangement to the debtor[s]; that I inquired of the debtor[s] whether there were questions regarding the contract and fee arrangement, and answered those questions to the satisfaction of the debtor[s]; and that the compensation disclosure statement filed in this case correctly and accurately sets forth the fee agreement contained in the employment contract.

> I also certify that the debtor[s], as required by Section III.A.3. of the Administrative Procedures for Electronic Case Filing, effective May 17, 2005, have actually signed a copy of all documents filed in this case containing an electronic signature.

---

[69] The court wants to make it clear that this form of sanctions extends only to the cases presently before the court. Should the U.S. Trustee file disgorgement motions in other Chapter 7 cases filed by Clark & Washington and Mr. Burroughs pending in the court's Northern Division to the date of this memorandum, the court would not, in the absence of egregious facts differing from those presently at issue, anticipate enhancing the sanctions beyond disgorgement.

The Compensation Disclosure Statement and Declaration shall both be dated and shall contain the signing attorney's handwritten signature.

6.  Clark & Washington and Mr. Burroughs shall, pursuant to Rules 9014(c) and 7054(b) of the Federal Rules of Bankruptcy Procedure, be directed to pay all costs associated with the prosecution of these contested matters with the exception of *Hart*.

7.  The obligations imposed on Clark & Washington and Mr. Burroughs in paragraph 5 above will remain in place for six (6) months unless, on motion of the United States Trustee filed prior to the expiration of the six (6) months, the court, for cause, extends this expiration date.

Orders consistent with this memorandum will be entered in each case.

FILED:  August 31, 2010

BY THE COURT

*/s/ RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE